GORTON *v.* HARMON.

1. RAILROADS—OPERATION OF TRAINS—HEADLIGHTS—NEGLIGENCE
   It was negligence for a railroad company to run its train at night through the country and across highways at the rate of 30 miles an hour without any headlight and with only a red light hung on the rear of the tender of the locomotive, which was running backwards.

2. SAME — HIGHWAY CROSSINGS — INJURIES TO TRAVELERS — CONTRIBUTORY NEGLIGENCE.
   It is not negligent for travelers on the highway to fail to stop and listen for a train when approaching a railway crossing, where the circumstances are such that the train may be seen in ample time to stop.

3. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   In an action against a railroad company for damages for the death of plaintiff's wife at a highway crossing, evidence ex-

amined, and *held*, that whether plaintiff was negligent in attempting to cross the track without stopping to listen was a question for the jury.

4. PLEADING—NEGLIGENCE—VARIANCE.
    A declaration alleging a case of gross and wanton negligence will support a verdict based upon ordinary negligence.

5. DEATH—DAMAGES—DEATH OF WIFE—COST OF MAINTENANCE.
    The measure of damages for the death of a wife is the value of her services lost to the plaintiff, less the cost of her maintenance.

Error to Genesee; Wisner, J. Submitted February 21, 1908. (Docket No. 128.) Decided May 1, 1908.

Case by George T. Gorton, administrator of the estate of Matie Gorton, deceased, against Judson Harmon, receiver of the Pere Marquette Railroad Company, for the negligent killing of plaintiff's intestate. There was judgment for plaintiff, and defendant brings error. Reversed.

*Stevens, McPherson & Bills* ( *Carton & Bray*, of counsel ), for appellant.

*Black & Roberts* ( *De Vere Hall*, of counsel ), for appellee.

Defendant's railroad runs northwesterly and southeasterly. A highway known as "Atherton road," running east and west, crosses the railroad at an angle of 35 degrees. Plaintiff and his wife and a Mr. Allen and his wife, on the night of January 5, 1906, at about 10 o'clock, drove with a team of horses and a surrey from the east to the west over the Atherton road. While crossing the railroad track the hind wheels of the surrey were struck by the tender of an engine attached to a passenger train and both women were killed. Plaintiff brought this suit to recover damages for the loss of the services of his wife.

The train, a passenger train, left Detroit at 5:30. When near Milford, about 30 miles from the place of the accident, the engine was disabled. A southbound freight

train was near the place of the accident. The defendant ordered the engine of the freight train to take the passenger train through to Flint. There was no turntable or Y near the place of the accident, so the engine was coupled to the passenger train, with its headlight towards the coaches. A red lantern was hung on the back end of the tender. There was nothing but the red lantern, except the whistle when blown, the bell when rung, and the light from the passenger coaches to indicate the presence of a train. The engineer's vision was obscured by flurries of snow and flying coal dust from the tender. The train was running 30 miles an hour, with an automatic bell ringing. A strong wind was blowing from the northwest. The ladies were sitting upon the back seat; plaintiff was driving, and sat upon the right side of the front seat. They had driven from the north on the north and south road which crossed Atherton road 80 rods from the railroad crossing. The ground was frozen and the horses were shod. After turning west upon the Atherton road they drove at a slow trot or "shack" until they were struck. Both Mr. Gorton and Mr. Allen testified that, as they approached the track, with which both were familiar, they looked for a train. One of them saw some red lights, but saw nothing to indicate that they were on an approaching train. Mr. Allen testified that he thought once he heard a whistle, and he looked for a train. They did not see the train until just as the horses were about to step upon the track. Allen saw it first, Gorton an instant later. Allen testified that Gorton "went to try to stop but couldn't." Mr. Gorton testified:

"When I saw it was a train I knew I could not stop, but I thought there was plenty of time to get across."

The train consisted of four coaches, all lighted. The engineer did not see the vehicle nor feel the engine strike it. He saw the team running west down the highway.

Plaintiff's intestate, 35 years old, left surviving her her husband, a son, and daughter, aged respectively 37, 15, and

13 years old.    Plaintiff recovered verdict and judgment for $4,880.

GRANT, C. J. (*after stating the facts*).  1. Counsel for the defendant do not deny that it was negligence in the defendant to run its train through the country and across highways at the rate of 30 miles an hour without any headlight.    Whether such an act is gross negligence we need not determine.    We may rightfully say it was negligence without excuse.    The sole defense upon this branch of the case is that the defendant and Mr. Allen were guilty of contributory negligence.    Their negligence is alleged to consist in that they did not stop when nearing the track and listen for a train.    Had it been daylight there would clearly have been no obligation to stop, for they could have seen in ample time to stop their team. For hundreds of feet the train was in plain sight to the traveler by daylight.

To run a train across the country and public highways without any headlight is a most unusual thing.    It is a matter of common knowledge that trains almost universally have headlights which throw a powerful light ahead of the train, and that this light can be seen, where there are no obstructions, for a great distance.    Travelers, in the absence of any other warning, have a right to assume that the engines of trains are provided with such lights. The red light on the end of the tender was no notice of the approaching train.    If the travelers saw the red light it does not follow that they could see it move towards them, for it would seem nearly stationary as they looked at it. Red lights on the rear of trains are indication of danger to those in the rear.    They have not been used upon the front of trains as a warning to travelers.

It is also suggested that these travelers could have seen the lights shining from the windows of the cars.    There is evidence that the interior lights were shining from the passenger cars.    Whether the cars were supplied with shades and whether some of them were down does not

appear. It does appear, however, that the wind was blowing the dust from the coal in the tender and the smoke from the engine directly between the travelers and the cars behind the engine. It cannot therefore be said as a matter of law that these lighted cars could have been seen by the travelers. For the same reason, although the bell was ringing automatically, and although the whistle may have been blown at the proper place, it does not follow that the travelers should or would have heard it even if they had stopped, for the wind was carrying the sound from them.

It must be conceded that the charge of the court was very favorable to the defendant, unless it should have directed a verdict. We may, however, with propriety give one excerpt from the charge, as follows:

"I further instruct you that if as the plaintiff approached the railway crossing, he could by stopping, looking and listening and at a safe distance, have determined whether or not the train was in dangerous proximity, and by so doing could have averted the accident, it was his duty so to do, and failing to do so he cannot recover in this case, * * * unless you find from the evidence that the conduct of defendant was such as to induce him to believe that it was not necessary for him to stop and look and listen in order to ascertain whether a train was approaching the crossing in such proximity as to make it unsafe to cross the track."

We think the question of contributory negligence belonged, and was properly submitted, to the jury.

2. It is urged that the declaration alleges a case of gross and wanton negligence, and, under the instruction of the court, the jury were allowed to find a verdict based on ordinary negligence. The greater includes the less. Under a charge of murder the defendant may be found guilty of crimes of lesser degree. It would certainly reflect upon the wisdom of the law that would permit parties to be found guilty of lesser crimes though not specifically charged therewith,—but would not permit recovery in a civil action where a greater degree of negli-

.gence is charged but which includes the less. This point, however, is ruled against the defendant by *Keating* v. *Railroad Co.*, 104 Mich. 418; *Richter* v. *Harper,* 95 Mich. 225.

3. The court instructed the jury that the measure of damages was the value of the services lost to the plaintiff, and that they should not deduct the cost of her maintenance. It is the well-settled rule under this and similar statutes, that compensation is limited to the pecuniary loss sustained. *Walker* v. *Railway Co.*, 111 Mich. 518, and authorities there cited. This question has not before been presented to this court. Counsel for the plaintiff cite *Bowdle* v. *Railway Co.*, 103 Mich. 272, and quote from the syllabus as follows:

"And it is held that the plaintiff was properly limited in his recovery to the value of such services as the wife would have been likely to render in the discharge of her ·domestic duties."

While the syllabus is a correct statement of the law, the question was not discussed in the majority opinion, and the language of the syllabus is quoted from the dis-senting opinion.

Counsel for plaintiff cite several cases and text-book authorities holding that a husband is entitled to recover the reasonable value of the time and services lost to him, but none of them discuss the question now before us. It is as much the duty of the husband to provide suitable clothing and maintenance for his wife as it is for his son. He is entitled to the value of the services of both. It is the universal rule that in case of a son or daughter the cost of maintenance must be deducted from the value of his services. *Snyder* v. *Railway Co.*, 131 Mich. 418; *McDonald* v. *Steel Co.*, 140 Mich. 401. There can be no distinction between the case of a son and that of a wife. The pecuniary loss in each case is the value of the services less the cost of maintenance. See ·*Gulf, etc., R. Co.* v. *Southwick* ( Tex. Civ. App.), 30

S. W. 592; *Denver, etc., R. Co.* v. *Gunning,* 33 Colo. 280; 13 Cyc. p. 370.

It follows that the instruction of the court in this regard was erroneous.

Other questions are raised, but, as they may not arise upon a new trial, we refrain from discussing them.

Judgment reversed, and new trial ordered.

BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.