CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* MOON.

Opinion delivered Nov. 30, 1908.

1. RAILROADS—COLLISION AT CROSSING—CONTRIBUTORY NEGLIGENCE.—Where, in an action for personal injuries sustained in a collision at a public crossing, it appeared that plaintiff in the night time was driving a wagon which made a noise, that the situation was such that he could not see a rapidly approaching engine until he reached the dump of the track, that the engine was being backed on its own momentum and without much noise, and that the only lights on it were two lanterns hung on either side of the tender, the question whether plaintiff was guilty of contributory negligence was properly left to the jury. (Page 233.)

2. SAME—LIABILITY FOR INJURIES AFTER DISCOVERY OF PERIL.—An instruction to the effect that the railroad company would not be liable for plaintiff's injuries if he was negligent "unless you find that the

trainmen in charge of the locomotive by the use of ordinary diligence could have prevented the injury" should have been modified by adding, "after discovering the danger of the plaintiff." (Page 234.)

3. SAME—NEGLIGENCE IN BACKING LOCOMOTIVE.—It was not error to instruct the jury as follows: "If you find from the evidence that it was more dangerous to back the engine than to run it in the usual way with the headlight to the front, it was negligence in defendant's employees to so run the engine if said employees could have turned the engine . . . so as to have run the engine with the headlight to the front." (Page 235.)

4. INSTRUCTIONS—RELEVANCY TO EVIDENCE.—Where plaintiff was injured by an engine being backed over him in the night time, it was error to instruct the jury that plaintiff was not guilty of contributory negligence if without fault or carelessness he thought that the engine was going in the opposite direction, if there was no evidence tending to prove that he was misled in this manner. (Page 235.)

Appeal from Scott Circuit Court; *Daniel Hon,* Judge; reversed.

*Buzbee & Hicks* and *George B. Pugh,* for appellants.

1. Failing to stop, look and listen, plaintiff was guilty of such negligence as to bar a recovery. 54 Ark. 431; 56 *Id.* 457; 61 *Id.* 549; 62 *Id.* 157; 65 *Id.* 235; 3 App. Cases, 1155; 2 Wood on Railways (Minor's Ed.) 1518; 78 Ark. 55, 355, 520; 81 *Id.* 325; 62 *Id.* 235.

2. Review the instructions and contend that under the authorities *supra* the court erred in its instructions to the jury.

*John W. Goolsby,* for appellee.

1. The cases cited by appellant are not applicable. They ignore the doctrine laid down in 54 Ark. 159.

2. The burden was on appellant to show want of negligence. Kirby's Digest, § § 6607, 6773; 63 Ark. 636; 65 *Id.* 235; 69 *Id.* 380.

3. The question of negligence was for the jury, and the matter was submitted on proper instructions. Cases *supra.*

HILL, C. J. This is an action by R. G. Moon, as next friend of Robert J. Moon, his son, and in his own behalf, to recover damages of the Chicago, Rock Island & Pacific Railway Company for injuries received by Robert J. Moon at a railroad crossing. He recovered, and the railway company has appealed.

Evidence to establish the following facts was adduced on behalf of the plaintiff:

Robert J. Moon, a lad of seventeen years, was driving a wagon and team on a public highway leading across the track of the appellant railroad company. The road he was traveling ran almost parallel with the railroad track for some distance, and then turned diagonally towards the track and crossed it where the track was laid upon a dump. Before reaching this dump, the road came down a little hill, and then was on level ground, and then rose on to the dump and crossed the track. There was a fence between the road on which the boy was traveling and the railroad. The boy approached the crossing in the same general direction in which an engine came which struck him at the crossing. The accident occurred about seven o'clock, on a moonlight night in November. The engine was backing, and was running rapidly; the steam had been cut off, and it running down grade on its own momentum and not making much noise. It had no lights on the rear end, which was the approaching end, except two lanterns; one hung on each side of the tender. (The engineer said it had only one lantern upon it; but the other witnesses say it had two.) No whistle was sounded within half a mile of the crossing. The boy was seriously injured, and his memory has been impaired, and he is unable to recall the facts leading to his injury. The court at the conclusion of the testimony gave instructions which excellently stated the law governing the facts of the case, except as hereinafter set out.

1. The first contention of the appellant is that the evidence establishes the fact that Robert Moon received his injuries by reason of his own negligence, and that the case should have been withdrawn from the jury. The court is unable to concur in this view of the evidence. The boy was driving a wagon, which was making a noise, and which might have deadened his hearing of the approaching engine; but this, of course, would not excuse his duty to look and listen for the approaching engine. The situation of the road would make it more difficult to see the engine than if the engine were approaching on a level, as he had to go down a depression and then drive up the dump in order to cross the track; and the fence was between him and the engine.

None of these facts would excuse him from the duty to look and listen, but they might explain why he did not see or hear the approaching engine if he did look and listen.

The only lights to be seen on the approaching engine were the two lanterns hung on either side of the tender; and in the night time an ordinarily prudent and careful person might easily be misled as to the distance the engine so equipped and moving was from the crossing when the attempt was made to cross in front of it.   One of the witnesses, who was about to walk across a bridge near the crossing, was deceived as to its distance, and he would have attempted to cross but for his brother, who was with him, who saw that the engine was too close for them to safely cross the bridge.   They had an unobstructed view of the approaching engine, and were walking toward it; and it would naturally be easier for one approaching with less opportunity for an accurate view to be deceived than were these men on the track.   A somewhat similar situation was presented in the case of *St. Louis, Iron Mountain & Southern Railway Company* v. *Johnson,* 74 Ark. 372, and the court held that the deceptive appearance of an approaching train in a dim light was sufficient to send the question of contributory negligence to the jury.

2.   It is insisted that the court erred in modifying the eleventh instruction requested by the defendant, in which the court added thereto this clause: "Unless you find that the trainmen in charge of the locomotive, by the use of ordinary diligence, could have prevented the injury," making the instruction read as follows: "If you find from the evidence in these cases that R. J. Moon saw or heard the engine backing down the railroad track towards the crossing, but thought he would have time to cross the track before the engine reached the crossing, your verdict will be for the defendant in both cases, notwithstanding you may believe that the engine was backing at a dangerous rate of speed, and that no signals for the crossings were given, unless you find that the trainmen in charge of the locomotive, by the use of ordinary diligence, could have prevented the injury."

There was evidence tending to prove negligence after discovering the boy's dangerous proximity to the track, which would have made the modification proper if it had been correctly worded; but it was not, owing to the omission from it of the discov-

ery of the danger of the negligent traveler. It should have
been, "unless you find that the trainmen in charge of the locomo-
tive, by the use of ordinary diligence, could have prevented the
injury *after discovering the danger of the plaintiff."*

3. Objection is made to the seventh instruction, which
reads as follows: "If you find from the evidence that it was
more dangerous to back the engine than to run it in the usual way
with the headlight to the front, it was negligence in defendant's
employees to so run the engine if said employees could have
turned the engine when they left the cars at Mansfield and
Booneville, when they went for water, so as to have run the en-
gine with the headlight to the front."

There was evidence tending to prove that it was owing to
an emergency happening in the run which caused the trainmen
to back the engine from Booneville to Mansfield. Appellant's
witnesses testified that it was more dangerous to back an engine
than to run it with the headlight in front. The run made with
the engine in this condition was nineteen miles, and between
Booneville and Abbott, near where the accident occurred, there
were eight crossings of the track by public roads. Whatever
emergencies may render the running of an engine in this way,
a proper discharge of the employees' duties to the company,
they do not excuse them to travelers on public highways cross-
ing the tracks. The act of May 28, 1907, requires any company,
corporation or officer of court, owning or operating a railroad
over fifty miles in length, in whole or in part within this State,
to equip, maintain and use upon each and every locomotive
being operated in road service in the State in the night time,
a headlight of power and brilliancy of 1500 candle power. Acts
of 1907, p. 1018. Careful train service, even without statutes,
would necessarily require locomotives to be equipped with head-
lights when traversing highways in the night time. 3 Elliott
on Railroads, § § 1159 and 1162.

4. The court gave this instruction over the objection and
exception of the defendant: "If the jury find from the evidence,
either direct or circumstantial, that plaintiff, R. J. Moon, drove
upon the railroad track of defendant at the crossing mentioned
in the complaint, and before driving thereon he saw the ap-
proaching train, or could have seen it, and without fault or

carelessness on his part honestly thought, by reason of the head-light being on the end of the locomotive in the direction from which the train was coming, that it was going in the opposite direction from the crossing, then he would not be guilty of con-tributory negligence, and your verdict should be for the plain-tiff."

No evidence is found that the headlight upon the engine was burning on the rear of the engine, but the inference from the whole evidence is that the only light upon it was from the lan-terns on the tender, which was then being used as the forward end. But, passing that point, the instruction tells the jury that if R. J. Moon, without fault or carelessness on his part, honestly thought, by reason of the headlight being on the end of the locomotive in the direction from which it was coming, that it was moving in the opposite direction from the crossing, then he would not be guilty of contributory negligence. The witness introduced on the part of the plaintiff who saw the acci-dent, said that he could and did see that the engine was moving towards him. This witness and his brother were walking in the direction of the approaching engine, and one or the other was evidently deceived as to the nearness of the engine to them, but not as to the direction it was traveling. There are no cir-cumstances in evidence tending to prove that the boy was misled by the appearance of the engine, or that any one would be misled as to the direction it was going by reason of its being reversed and carrying the lanterns in front instead of a headlight.

This instruction amounts to an invitation to the jury to find for the plaintiff upon a mere surmise that he was in this way misled, when there is no evidence whatever that he was so mis-led, nor any evidence that the appearance of the backing engine would appear as if it were going in the opposite direction; and certainly it is not a matter of common knowledge that an engine so operated would appear to be going in an opposite direction. Hence it can not be seen whether this verdict is responsive to the issues properly sent to the jury, or to this one improperly sent to it.

For the errors indicated in the instructions, the judgment is reversed and the cause remanded.