ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY
COMPANY v. KIMBRELL.

Opinion delivered January 26, 1914.

1. RAILROADS—INJURY TO TRAVELER AT CROSSING—LIABILITY—SPEED OF TRAIN.—Where plaintiff was struck by a train, while attempting to cross the tracks at a public crossing in a town, the evidence *held* to show that defendant did not give statutory signals, that defendant's train was running at a high rate of speed, that plaintiff was not guilty of contributory negligence, and that a case was made out which was properly submitted to the jury. *Semble*, unusual speed of a train, alone, is not sufficient to establish negligence, if the servants of the defendant railway company observed all other necessary precautions upon approaching the crossing. (Page 137.)

2. APPEAL AND ERROR—NEGLIGENCE—INSTRUCTION ON POINT NOT RAISED BY PLEADINGS.—In an action against a railroad company for damages for an injury to plaintiff at a railway crossing, where the issue was not raised by the pleadings, and there was no proof directed thereto, an instruction on the question of the keeping of a proper lookout by defendant's servants, is prejudicial error. (Page 139.)

3. Instructions—abstract instruction—prejudice.—Abstract in-
structions are deemed to be prejudicial, unless it can be clearly
seen from the record that no prejudice could have resulted. (Page
140.)

Appeal from White Circuit Court; *Hance N. Hut-
ton,* Judge; reversed.

*E. B. Kinsworthy, P. R. Andrews* and *W. G. Riddick,*
for appellant.

1. In support of the proposition that the evidence
does not sustain the verdict, counsel say that there is
no question under the testimony but that the engineer
complied with the statute, and fully discharged his duty
with respect to ringing the bell and sounding the whis-
tle (Kirby's Dig., § 6595); but that appellee, while he
claims that he kept the lookout required for his own
safety, and listened for approaching trains, is contra-
dicted by every circumstance in the case. The situation
presented here is one where the plaintiff failed to hear
and see what he must have heard and seen had he lis-
tened and looked. 74 Ark. 376; 105 Ark. 294.

2. The instructions given by the court were abstract
and misleading. Especially No. 6. There is no evidence
on which to base it. 63 Ark. 177; 77 Ark. 20; 80 Ark.
261; 88 Ark. 176; *Id.* 231; 96 Ark. 614; 90 Ark. 278.

*S. Brundidge* and *J. W. House,* for appellee.

1. There was sufficient substantial evidence to send
the case to the jury, and the evidence is legally sufficient
to sustain their verdict. 74 Ark. 376; 105 Ark. 269; 97
Ark. 405.

2. No error in the instructions given. The sixth
was justified by the evidence and the theory upon which
appellant predicated its principal defense. 77 Ark. 64;
89 Ark. 518; *Id.* 410; 92 Ark. 6.

McCulloch, C. J. The plaintiff, J. W. Kimbrell,
was struck by one of the passenger trains of the defend-
ant, St. Louis, Iron Mountain & Southern Railway Com-
pany, at a public crossing at Beebe, White County, Ark-
ansas, and he instituted this action to recover compensa-
tion for his injuries.

Plaintiff was a country merchant, residing some distance from Beebe, and came to Beebe in his two-horse wagon to get a load of groceries. After loading the wagon with his purchases, he drove across the railroad at a street crossing near the station to go to a lumber yard to get some tiling, and it was on his return trip across the track that the train struck him. The railroad at that point runs nearly north and south and the street crosses at right-angles. There are three tracks, about eight feet apart—a sidetrack and double main-line tracks. The passenger station is about 200 feet south of the crossing where plaintiff was injured, and the freight depot is situated about 381 feet south. There is another street crossing between the freight depot and the passenger station. The sidetrack was on the east of the main tracks, the side from which plaintiff was coming when he went on the track, and there were four or five box cars along on the sidetrack, the nearest one to the crossing being about ten feet distant. These box cars and the freight station obscured the view of the track toward the south from a point near the east side of the track.

According to the testimony adduced by plaintiff, he was sitting on the front end of his wagon and drove up to a point within a short distance of the track—from ten to twenty feet, according to the varying statements of the witnesses. He testified that he brought his team to a full stop and looked up and down the track and listened for approaching trains, and, failing to discover any, he proceeded to drive across, when the train struck his wagon, threw him out and inflicted serious injuries.

The train which struck plaintiff was the fast mail train coming from the south. Its regular schedule was about thirty-six miles an hour, and the speed at that time varied, according to the statements of different witnesses, from thirty to sixty miles per hour.

There was evidence adduced by the plaintiff which warranted the statement that the train was running at an unusually high rate of speed.

Plaintiff's testimony also tended to show that no signals of any kind were given by bell or whistle until just a moment before the train struck plaintiff.

Negligence on the part of the company is alleged (1) in leaving empty box cars on the sidetrack, which prevented travelers from discovering the approach of trains; (2) in running the train at a high and unusual rate of speed through the town of Beebe; (3) in failing to give signals for the crossing, and (4) in failing to keep a flagman or watchman at the crossing.

The defendant in its answer denied all the allegations of negligence, and alleged that the injury was caused by plaintiff's negligence in driving on the track without taking the necessary precautions to discover the approach of the train.

The jury awarded damages to the plaintiff, and defendant has appealed.

It is strenuously insisted, in the first place, that the evidence is not sufficient to warrant a verdict in plaintiff's favor; but, after considering it fully, we are of the opinion that a case was made for the jury. There is a sharp conflict in the testimony, and it is unnecessary for us to decide where the preponderance lies; but it is sufficient to say that there was substantial testimony to the effect that the plaintiff stopped his team and looked and listened for approaching trains and that he was guilty of no act of negligence which barred the recovery of damages. The testimony is also sufficient to warrant a finding that none of the statutory signals was given from the approaching train and that those in charge of the train were guilty of negligence in this respect which caused the plaintiff's injury. The evidence also warranted a finding that the train was run at an unusually high rate of speed. The unusual speed of the train was a proper element of consideration under the circumstances of this case, though the speed of the train, alone, would not be sufficient to establish liability if all other precautions were observed by those in charge of the train. In *Ford*

v. *St. Louis, Iron Mountain & Southern Ry. Co.*, 66 Ark. 363, Judge Riddick, speaking for the court, said:

"Public convenience and necessity of course require that railroad trains should run at a high rate of speed, and the mere fact that a train was running fast at the time of striking an animal is no proof of negligence on the part of the company, when unconnected with other facts tending to show that it was negligence under the circumstances to run at such speed; for trains are expected to run fast. But when the accident happens in a city or populous town, the circumstances then may be such that the jury would be justified in finding the company guilty of negligence in running its trains at a great and unusual rate of speed, and this is certainly true when the statutory signals are not sounded for the different street crossings."

No instruction was given by the court, either at the request of plaintiff or on its own motion, directly on the subject of the speed of the train, and the only mention of that subject was in an instruction given by the court at defendant's request; so we have nothing on this appeal to consider with reference to the question of the speed of the train.

Our conclusion is, as before stated, that the evidence warranted the verdict in plaintiff's favor on the charge of negligence against the defendant and the absence of contributory negligence on his part, and that those questions were properly submitted to the jury.

We are of the opinion, however, that the court erred in giving the instruction submitting the question of negligence of defendant's servants in failing to keep a lookout. This is instruction No. 6, which reads as follows:

"6. You are instructed that either the engineer or the fireman operating the train which it is alleged injured the plaintiff was required to keep a constant lookout for persons upon the track, and if you believe from the testimony that the plaintiff in this case was injured by the neglect of the engineer or fireman on such engine to keep such lookout, the defendant company would be lia-

ble to the plaintiff for all damages resulting from such neglect to keep such lookout, unless he was guilty of contributory negligence, and the burden of proof devolves upon the defendant to establish the fact that this duty was performed.''

There was nothing in the testimony in this case which warranted the submission of that question to the jury. Negligence in failing to keep a lookout was not charged in the complaint and there is no suggestion in the evidence of any negligence in that respect. The only thing developed in the evidence on that point was on the cross examination of the fireman, who was introduced as a witness by defendant. He stated that he kept a lookout as the train came into Beebe. The defendant was not called on to defend itself against a charge of negligence in that respect, and it was improper and prejudicial to submit that question to the jury. This is especially true in view of the instruction which the court gave at plaintiff's request to the effect that proof of injury by a train at a crossing made out a *prima facie* case of negligence and placed the burden of proof upon defendant to clear itself of the charge. That instruction was correct, but, taken in connection with the other instruction, it placed the burden on the defendant of clearing itself of a charge of negligence which was not made in the pleadings and to which no proof had been directed. Moreover, under the proof in this case we think that there is nothing that would justify the conclusion that failing to keep a lookout caused the injury, or that the injury could have been avoided if a lookout had been kept. The plaintiff drove from behind the box cars and upon the track when the train was too close upon him to stop it or check its speed, and the undisputed evidence is that the signals were given about the time that he drove on the track.

Counsel for plaintiff defend the instruction on the ground that the defendant introduced a witness whose testimony tended to establish the fact that the freight house did not obscure the view down the track and that plaintiff might, by looking in that direction, have discov-

ered the approach of the train. It is argued that this was sufficient to warrant a finding that the engineer or fireman could have seen plaintiff as he approached the track and that either they were guilty of negligence in failing to discover his presence or in failing to keep a lookout.

This does not answer the argument that there is no allegation of negligence in the complaint, and we are also of the opinion that, even if the statement of that witness be true, it does not follow that a lookout was not kept. The instruction was, in other words, entirely abstract in this case, and the rule is that abstract instructions are deemed to be prejudicial unless it can be clearly seen from the record that no prejudice could have resulted. *St. Louis, I. M. & S. Ry. Co.* v. *Denty,* 63 Ark. 177; *Ark. & La. Ry. Co.* v. *Stroude,* 77 Ark. 109; *Ark. Central Rd. Co.* v. *Fain,* 85 Ark. 532; *Chicago, R. I. & P. Ry. Co.* v. *Moon,* 88 Ark. 231; *St. Louis S. W. Ry. Co.* v. *Jackson,* 91 Ark. 14; *St. Louis & S. F. Rd. Co.* v. *Whayne,* 104 Ark. 506.

This court, in *Chicago, R. I. & P. Ry. Co.* v. *Moon, supra,* in discussing the effect of an abstract instruction, said:

"This instruction amounts to an invitation to the jury to find for the plaintiff upon a mere surmise that he was in this way misled, when there is no evidence whatever that he was so misled, nor any evidence that the appearance of the backing engine would appear as if it were going in the opposite direction; and certainly it is not a matter of common knowledge that an engine so operated would appear to be going in an opposite direction. Hence, it can not be seen whether this verdict is responsive to the issues properly sent to the jury, or to this one improperly sent to it."

So, in the present case, we can not determine from the record whether the jury based their verdict upon the conflicting testimony concerning the failure to give signals and the excessive speed of the train, or whether the verdict was based upon a surmise, invited by this in-

struction, that the keeping of a lookout was not proved and that the burden was on the defendant to establish it.

Counsel for plaintiff rely upon several cases in which we have laid down the rule that the giving of an abstract instruction does not call for a reversal if it can be seen that it had no prejudicial effect. *Miller* v. *Nuckolls*, 77 Ark. 64; *Smith* v. *Weatherford*, 92 Ark. 6.

Those cases do not, we think, vary the general rule, which is that, unless it can be seen that the abstract instruction could have had no effect upon the minds of the jury, the giving of such instruction calls for a reversal of the case. In other words, we must be able to see from the record, either that the jury did not follow the abstract instruction, or that it was one on which the evidence is so plain that they could not have followed it, before we can treat it as nonprejudicial. This is not such a case, for the testimony was sharply in conflict bearing upon the question of the disputed charge of negligence in failing to give signals, and, as before stated, the jury might have based the verdict upon the failure of defendant to prove that a proper lookout had been kept.

For the error indicated in this instruction, the judgment must be reversed and the cause remanded for a new trial.