FORT SMITH, SUBIACO & ROCK ISLAND RAILROAD COMPANY
*v.* MOORE.

Opinion delivered December 1, 1924.

1. MASTER AND SERVANT—NEGLIGENCE—QUESTIONS FOR JURY.—Evidence in an action for negligent killing of a locomotive fireman, *held* to warrant submission to the jury of the issue of negligence on the part of the engineer in backing the train at unusual speed so as to cause an unusually severe impact and to cause the fireman to fall from the tender; also of the issues whether the fireman assumed the risk or was guilty of contributory negligence.

2. MASTER AND SERVANT—INSTRUCTION—SUBMISSION OF IMPROPER ISSUES.—In an action for a negligent killing of a fireman, where there was no evidence that the engineer was unskilful or that

the brakemen were negligent, it was prejudicial error to give an instruction submitting those issues to the jury.

3.    RAILROADS—LIABILITY FOR NEGLIGENCE OF CONNECTING ROAD.—The fact that a railway company permitted another railway company to use a portion of its track did not render the former liable for the death of an employee of the latter killed by negligence of a fellow-servant.

Appeal from Logan Circuit Court, Northern District; *James Cochran*, Judge; reversed.

*Jas. B. McDonough,* for appellant; *E. H. McCulloch,* of counsel.

Deceased and the railway company at the time were engaged in interstate commerce, and the case is controlled by the Federal Employers' Liability Act.    201 N. Y. S. 242; Fed. 760; 192 N. W. 439; 119 Atl. 88; 284 Fed. 262, and other cases cited in appellant's brief.    Deceased assumed the risk, and assumed risk is a defense under the Federal law.    233 U. S. 492, 118 Ark. 304.    Plaintiff's evidence failed to make an issue to go to the jury on of negligence on the part of appellant.    There is no presumption of negligence.    100 Ark. 467.    The deceased was actually engaged in the running of the train, and, under the authority just cited, there is no presumption of negligence as against the defendant.    117 Ark. 504; L. R. A. Ann. Cas. 1917, p. 81.    Verdicts cannot be based on conjecture or guess.    113 Ark. 353; 116 Ark. 82; 174 S. W. 547; 117 Ark. 638.    There must be substantial evidence to support a verdict.    122 Ark. 445; 114 Ark. 112. It was error to give instruction No. 2.    Neither the complaint nor the evidence warranted the giving of same, as there was no evidence to show the incompetency of the engineer or the negligence of the brakeman.    156 Ark. 465.

*Robt. J. White,* for appellee.

If the court should hold that the defendants were engaged in interstate commerce, then the case reported in 241 S. W. 365 is controlling here.    The instructions given fully comply with the law there laid down, and the verdict was amply sustained by the evidence.

McCulloch, C. J. Appellant's intestate, William Moore, came to his death while working as a fireman in the service of appellant, Fort Smith, Subiaco & Rock Island Railroad Company, and this is an action against said appellant and also the other appellant, Chicago, Rock Island & Pacific Railway Company, to recover damages arising to the next of kin as well as to the estate of the decedent. There was a withdrawal of the claim for damages for the benefit of the estate, and the case proceeded to trial on the claim of damages for the benefit of the next of kin, and the trial resulted in a verdict in favor of appellee.

Appellant, Fort Smith, Subiaco & Rock Island Railroad Company, operates a short line of railroad from Ola, a point on the line of the Chicago, Rock Island & Pacific Railway, to Paris, Arkansas, and, by agreement, it used the station facilities and switch tracks of the Rock Island at Ola. At that place there is a sidetrack running parallel with the main track on the north and another track on the south, called the house track. The switches of each of these two sidetracks are near together at a viaduct over the tracks west of the station.

The decedent was a fireman, and his train was being made up about 6:30 o'clock on the morning in question. In making up the train, both of these sidetracks, as well as the main track, were used in assembling the cars, and there was testimony that the train was being worked hurriedly on account of the expected arrival of the westbound passenger train on the Rock Island. It is undisputed that there were interstate cars in the train being made up, and that the trainmen were therefore engaged in interstate commerce, which brings the question of liability within the operation of the Federal Employers' Liability Statute.

Shortly before the expected arrival of the passenger train, the engine of Moore's train headed out of the north sidetrack, pulling three or four cars, and went onto the main track of the Rock Island, and thence backed in on the house track for the purpose of coupling to a car

or string of cars on that track. There is a little uncertainty in the testimony as to what particular cars were to be coupled into the train, but there is testimony that there was a string of twelve cars standing on the track, and that Little, the rear brakeman, was standing on that string of cars, giving signals. Scott, the head brakeman, was standing on the ground receiving signals from Little and transmitting them to Reed, the engineer, who moved the train on signals from the brakemen. The conductor was in the caboose, or baggage car, at the time, and did not supervise any of the movements of the train.

There is a water tank at Ola, which stands between the main track and the north sidetrack, and water can be taken by engines on either of those tracks. There is some testimony to the effect that Moore's engine was to take water at that tank after it came out of the house track and backed in on the north passing track, and there is also evidence that it was the duty of the fireman to prepare a certain compound to be placed in the water, as it was transferred from the tank to the tender, in order to soften it—the water being considered injurious to the boilers. The theory of appellee is that Moore was standing on the top of the tender, with a bucket, mixing the compound, preparatory to taking water at the tank, and that he was thrown from the engine by a violent impact of the cars attached to the engine and against the cars standing on the sidetrack. It is not certain that any one saw Moore fall from the engine, but the engineer, Reed, testified that, as he backed in on the house track and about the time that he made the coupling with the other cars, he saw something disappear from the rear end of the tender, and at once threw on the emergency brake and stopped the train within three or four feet. As soon as the train was stopped, one of the brakemen found Moore's body under the rear trucks of the tender, and he was dead as soon as they could back the engine from off his body. Two of his fingers were cut off, and they were found back about twenty feet, as well as his gloves, and several witnesses testified that there was blood on

the track for a considerable distance in front of the engine, one of the witnesses said a distance of seventy-five feet.

The engineer and the brakeman testified that the train was backing in at a speed of about two miles an hour, and that there was no unusual jar or jerk, and that the impact against the other cars was slight and not unusual.

In the complaint several charges of negligence were made, particularly the charge of negligence on the part of the engineer in backing in at an unusual speed and in bumping against the other cars so as to make a violent impact which caused Moore to fall from the train. It is also alleged that the company was guilty of negligence in employing Reed, an unskillful engineer. It is also charged that the brakemen were guilty of negligence in failing to give proper signals. The suit is against both of the railroad companies, and liability against the Chicago, Rock Island & Pacific Railway Company is sought to be established on account of the fact that it permitted its track to be used by the other company.

It is earnestly insisted, in the first place, that the judgment should be reversed and the cause dismissed, on the ground that the case is fully developed and that the evidence is not legally sufficient to sustain the verdict. The contention is that there is no evidence that the train was backed in on the house track at an unusual rate of speed or that there was an unusual jerk or impact, or that there was any other negligence. It is also contended that there is no evidence that Moore was thrown from the train. It is also contended that the undisputed evidence shows that Moore assumed the risk.

Upon a careful analysis of the testimony we have reached the conclusion that there is sufficient to warrant submission to the jury of the issue of negligence on the part of the engineer in backing the train on the house track at an unusual speed, so as to cause an unusually severe impact and cause Moore, the fireman, to fall from

the tender, and we are also of the opinion that there is sufficient evidence to show that Moore was standing on the tender, in the performance of his duty with respect to mixing the compound, and that he did not assume the risk, and was not guilty of contributory negligence. It is true that the engineer and the two brakemen testified that the train was backed in at a speed of only two miles an hour, that there was no sudden or unusual jerk or impact, but the engineer testified that he saw an object disappear from the top of the tender, and that he at once applied the emergency brake and stopped the train, whereupon the body of Moore was found under the tender. Now, the jury might properly have drawn the inference that it was Moore's body that disappeared from the top of the tender as he was thrown off, and the jury might have found, from the statement of the witness, that this was at the time of the impact when the coupling was made. To this extent the jury might have credited the testimony of Reed, the engineer, but they might also have rejected his testimony to the extent of the statement that there was no unusual impact or jerk, and that he was able to stop the train within three or four feet. The testimony of other witnesses showed that Moore's body was dragged as far as seventy-five feet, and, if that were true, it operated as a contradiction of the testimony of Reed in his statement that he stopped the train within a distance of three or four feet after he saw the object disappear from the top of the tender. The jury might therefore have found that Moore was standing on the top of the tender, in the performance of his duty, that the engineer was guilty of negligence in moving the train at an excessive rate of speed, and that Moore was thrown from the tender on account of the unusual impact, and his body dragged a considerable distance. It was also a question for the jury to determine whether or not Moore assumed the risk or was guilty of negligence in standing on the top of the tender.

There was much testimony adduced by appellant to the effect that it was customary for the fireman to mix

the compound on the deck of the locomotive, but this did not make a case of negligence as a matter of law for the fireman to stand on top of the tender to perform that duty. It was a question for the jury, after all, to determine that issue. The bucket of compound was found, mixed, on top of the tender, and there is evidence that the trainmen were getting ready to go in on the other track to take water, and that, together with the testimony of the engineer that he saw an object disappear from the top of the tender, is sufficient to warrant the inference that Moore was standing there, performing the duty mentioned above, when he was thrown from the train. There was no error therefore in submitting the issue to the jury on this charge of negligence.

We are of the opinion, however, that the court erred in submitting the issue as to negligence of the company in employing an unskillful and incompetent engineer, and that the court also erred in submitting the issue as to negligence on the part of the brakeman in failing to give the proper signals. There is no testimony in the record to warrant a submission of either of those issues to the jury, and appellants objected to the instructions submitting those issues, and saved proper exceptions.

According to the testimony of Reed himself, he had served an apprenticeship as a fireman for about two and a half years on the main line of the Chicago, Rock Island & Pacific Railway Company, and, when he left the service of that company and took service with the Fort Smith, Subiaco & Rock Island Railroad Company, he was examined as to his qualifications as an engineer on that road. He ran extra for a while, and made several trips, and had been a regular engineer on the railroad for some time before the occasion now under consideration. There is no testimony to contradict this, and no testimony that Reed had ever been guilty of any negligent act, unless it be found that he was negligent on this particular occasion. In order to render the company liable on this issue, it is necessary to show that it negli-

gently employed an unskillful and incompetent servant, and there is no testimony at all to show that Reed was incompetent and that such incompetency was known to his employer, or should, by the exercise of reasonable care, have been known. This could not be proved by the mere occurrence of a negligent act on this particular occasion. Nor is there any testimony in the record tending to establish negligence on the part of either of the brakemen. They testified that they were in their proper places, giving signals, and there was absolutely no contradiction of their testimony. It was error to submit these issues, and the error was prejudicial, for there is no way of determining what influence it may have had upon the verdict of the jury. *St. L. I. M. & S. Ry. Co.* v. *Kimbrell,* 111 Ark. 134; *Hight* v. *Sharp, ante,* p. 424.

There are numerous assignments of error with respect to the court's charge, but, as the same questions may not arise on another trial, we deem it unnecessary to discuss them.

There is no liability on the part of the Chicago, Rock Island & Pacific Railway Company, for the reason that it had no connection with the employment or with the service of Moore, who was an employee of the other railroad company. The fact that the Fort Smith, Subiaco & Rock Island Railroad Company was permitted to use the track of the Chicago, Rock Island & Pacific Railway Company does not render the latter responsible for damages to servants of the former company on account of negligence of its own servants.

The judgment against both companies is therefore reversed, and the cause will be dismissed as to the Chicago, Rock Island & Pacific Railway Company and remanded for a new trial as to the Fort Smith, Subiaco & Rock Island Railroad Company. It is so ordered.