HENRY RASTEDE, Administrator, Appellee, v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY et al., Appellants.

**COURTS:** Comity Between States—Procedure Governing. A cause of
1  action which is predicated on the statutes of a foreign state will, as a matter of comity, be enforced in the courts of this state, but only under and in accordance with the recognized and prescribed court procedure of *this* state.

**RAILROADS:** Accidents at Crossings—Contributory Negligence—Ab-
2  sence of Signals—Effect. The failure of trainmen to give the required statutory signals when approaching and passing over a public highway crossing may have material bearing on the issue whether the plaintiff was guilty of contributory negligence. Instructions reviewed, and held ,not to make the negligence of the deceased dependent upon the *absence* of negligence of the defendant. (See Book of Anno., Vol. I, Sec. 8018, Anno. 36 *et seq.*)

**NEGLIGENCE:** Contributory Negligence—Eyewitnesses—Improper Submission of Issue. When the record affirmatively shows the absence of all eyewitnesses to a fatal accident because the sole survivor was not observing the deceased persons immediately preceding the accident, the court should peremptorily instruct that there were no such witnesses; but the defendant is not, in such case, prejudiced if the existence of such witnesses is submitted to the jury.

**TRIAL:** Instructions—Correct but not Detailed. An instruction relative to the measure of damages which is correct as far as it goes will be deemed all-sufficient in the absence of a request for elaboration as to the detailed method to be followed in determining the present worth of the damages.

**RAILROADS:** Accidents at Crossings—Contributory Negligence—Red Light on Tender. The fact that an engine was, in the nighttime, and at the time of an accident, running backwards, and across a public crossing, with a *red* light on the tender, may quite persuasively demonstrate that the injured party was not guilty of contributory negligence *per se*.

**NEW TRIAL:** Verdict—Excessiveness—$14,500. Verdict of $22,500 for death, reduced by the trial court to $14,500, held not excessive. (See Book of Anno., Vol. I, Sec. 11550, Anno. 324 *et seq.*)

Headnote 1: 12 C. J. p. 438; 15 C. J. pp. 1181, 1182. Headnote 2: 33 Cyc. pp. 1029, 1033. Headnote 3: 4 C. J. p. 1033; 33 Cyc. p. 1130. Headnote 4: 17 C. J. pp. 1062, 1063; 38 Cyc. pp. 1693, 1694. Headnote 5: 33 Cyc. p. 1093. Headnote 6: 17 C. J. p. 1350.

Headnote 1: 7 R. C. L. 1064. Headnote 2: 22 R. C. L. 1040. Headnote 6: L. R. A. 1916C, 820.

*Appeal from Woodbury District Court.*—ROBERT H. MUNGER, Judge.

MARCH 15, 1927.

Action at law for a wrongful death caused in the state of Nebraska. It is prosecuted by the administrator of the estate of deceased for the benefit of his "next of kin." The cause of action is predicated upon a certain statute of the state of Nebraska, known in the record as Sections 1382 and 1383 of the Compiled Statutes of Nebraska. Some of the alleged negligence also is predicated upon other statutes of the state of Nebraska, known in the record as Sections 5377 and 5387 of the Compiled

Statutes of Nebraska. The decedent met his. death upon the highway at a railway crossing, and as the result of a collision between the automobile of the decedent and a moving engine of the defendant company's. There was a verdict for the plaintiff, and the defendant has appealed.—*Affirmed.*

*Jepson, Struble, Anderson & Sifford,* for appellants.

*Ray E. Rieke* and *Smith, Schall, Howell & Sheehan,* for appellee.

EVANS, C. J.—The decedent, Albert Rastede, was killed at defendant's railway crossing about 9 P. M. on Sunday night, July 20, 1924. He was a widower, 29 years of age, and left surviving him two sons, aged 8 years and 1½ years, respectively. He was a farmer, and resided in Thurston County, Nebraska, and not far from the town of Emerson. At the time of the accident, he was one of a party of four, occupying his own automobile, and traveling westward toward his home. The party had left Sioux City at 7 P. M. The party consisted of Rastede, Rudolph Johnson, Miss Lewin, and Mrs. Payne. At the time of the accident, Johnson was driving, and Miss Lewin occupied the front seat with him. Rastede occupied the right side of the rear seat, and Mrs. Payne the left side of the same seat. Their course was westward, and they were traveling upon the main traveled road between Sioux City and Emerson. The road crossed the railway of the defendant at right angles at the place of the collision. While making this crossing, the automobile was struck by one of defendant's engines, coming from the north, and running backward, without any lights pointing southerly, except a red light and a small white light with no reflector. The automobile had partially covered the crossing before the collision, and it was struck in such a way as to carry it southwesterly to the west side of the railway track. One of the occupants, Mrs. Payne, was thrown from the automobile and clear of its wreckage; the other three occupants were pinned underneath the car. An explosion occurred, and a fire burst forth in the wreckage, and the three occupants lost their lives therein. The general nature of the negligence charged against the defendant was that it was operating its engine in the night without proper lights and without

proper warning and at a dangerous rate of speed under such circumstances.

The engine in question was a "helper." It appears that, from the town of Emerson northeasterly to the town of Nacora on the defendant's line, there is an upgrade which calls for the service of two engines to pull a freight train thereover. At 8 o'clock on that evening, a freight train left Emerson, and was assisted by this engine as far as Nacora, a distance of 5½ miles. When it arrived at Nacora, this engine was detached from its service. Another freight train at Nacora was headed for Emerson, and took the right of way. Shortly thereafter, this engine took the right of way to return to Emerson. It was on this return that the collision occurred. Sections 1382 and 1383 of the Compiled Statutes of Nebraska are as follows:

"1382. Whenever the death of a person shall be caused by the wrongful act, neglect, or default, of any person, company or corporation, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in respect thereof, then, and in every such case, the person who, or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

"1383. Every such action shall be commenced within two years after the death of such person. It shall be brought by and in the name of his personal representative, for the exclusive benefit of the widow or widower and next of kin. The verdict or judgment should be for the amount of damages which the persons in whose behalf the action is brought have sustained, and the avails thereof shall be paid to and distributed among such persons in the same proportions as the personal property of an intestate under the inheritance laws. A personal representative shall not compromise or settle a claim for damages hereunder until the court by which he was appointed shall first have consented to and approved of the terms thereof."

Sections 5377 and 5387 are as follows:

"5377. A bell of at least thirty pounds weight or a steam whistle shall be placed on each locomotive engine, and shall be rung or whistled at the distance of at least eighty rods from

the place where the railroad shall cross any other road or street, and be kept ringing or whistling until it shall have crossed such road or street, under a penalty of fifty dollars for every neglect, to be paid by the corporation owning or operating the railroad, and also be liable for all damages which shall be sustained by any person by reason of such neglect: *Provided,* this section shall not apply to cars or trains operated by electricity, and such electric cars and trains shall be equipped with air whistles which shall be whistled as herein provided.''

''5387.    On and after the first day of January, 1914, it shall be the duty of every person, company and corporation, or the receiver, lessee, manager or superintendent thereof, owning or operating lines of railway in the state of Nebraska, to equip, maintain and use upon each and every locomotive engine operated in road service within the state of Nebraska, a headlight of a power that will plainly outline the figure of a man on or adjacent to the track at a distance of six hundred feet in front of the locomotive. The visibility herein required is intended to be measured by and under ordinary night conditions, and for the sight of a person having the usual visual capacity required of locomotive engineers from their place in charge of a moving locomotive to such distance: *Provided,* however, this section shall not apply to locomotive engines running not more than ten miles into the state to complete their runs nor to locomotive engines used in regular switching service, nor to such engines as may be used exclusively between sunrise and sunset, nor to such engines when going to or returning from repair shops for repairs.''

The foregoing are the only laws of Nebraska which are involved.

I.    Before we proceed to a consideration of the specific assignments of error, a few preliminary matters need to be noticed.

The question of visibility is a very important one in the case. Was it *light* or *dark* at the time of the collision? The plaintiff contends that it was dark,—so dark that the engine and tender could not be recognized without the aid of lights. The defendants contend that the visibility was sufficient to enable an observer to see the engine and tender without lights. The evidence for the plaintiff is that the collision occurred at 9 P. M.; that for the defendant, that it occurred somewhat earlier. The engineer, who is a defendant, testified as a witness that it was between

8:30 and 8:40.  He further testified that, as he approached this crossing, 150 to 200 feet away, he saw the reflection of an automobile light from the east extend over the crossing, but that he was unable to see the automobile itself, and did not see it as it approached the crossing; that he did see a dark object pass in front of (or behind) the backing tender, just before the collision. The watch of one of the victims was taken from the ashes in a broken condition, and indicated 9 o'clock as its stopping time.  A weather observer testified that the sun set that evening at 7:56, and that the ordinary time of twilight would be 35 minutes thereafter.  The moon was due to rise at 10:45.  The weather became cloudy about 7 P. M., and continued cloudy up to the time of the accident.  The freight train which this "helper" pushed, left Emerson at 8 o'clock, with its headlights already on.  The cloudy weather necessarily shortened the twilight.  Whether the time be regarded as 8:40 P. M. or as 9 P. M., it is very evident upon the record that darkness, rather than light, represented the prevailing visibility.

The approach of the engine to this crossing was through a considerable cut.  Only the upper part of the engine and tender could be seen at any point up to close proximity to the tracks. The running of this engine without lights appears to have been a violation of Section 5377.  The use of the red light not only failed to be a compliance with any rule, but its use was misleading and deceptive.  The recognized significance of the red light is that the train is proceeding in the other direction.  It is intended to guard the train against approach or collision from the rear.  It does not operate as a warning to an observer of the backing of the train, but does operate as an assurance to the observer that the train is proceeding, or is about to proceed, in the other direction.  Because of its deceptive effect, the presence of this red light at the rear end of a backing train became a rather peculiar negligence on the part of the defendant, and tended to excuse the observer from discovering that the approaching train was running in contradiction to its signals.  At the close of testimony, the defendants moved for a directed verdict, on the ground of failure both to prove negligence of the defendants and freedom from contributory negligence on the part of decedent. This motion was properly overruled, as will appear from our later discussion of specific features of the case.

II. Appellants complain of Instruction No. 10. This instruction was to the effect that it was the duty of the defendant railway, under Section 5377 of the Statutes of Nebraska, in approaching such crossing to ring the bell or sound its whistle continuously for a distance of 80 rods, and that, if it failed to do so, such failure would be "prima-facie evidence of negligence." Such instruction at that point was in strict accord with our previous holdings in this state. *Girl v. United States R. Adm.*, 194 Iowa 1382; *Fisher v. Cedar Rapids & M. C. R. Co.*, 177 Iowa 406; *Glanville v. Chicago, R. I. & P. R. Co.*, 196 Iowa 456. The complaint is that this is not the rule under the Nebraska decisions; that, under the decisions of Nebraska, though such failure is deemed evidence of negligence, to be considered by the jury in connection with all other evidence, yet it is not to be deemed "prima-facie evidence of negligence," as a matter of law. Certain decisions of the Nebraska court are cited in appellants' brief to this effect, and it is contended that the case should be ruled by such holdings, and not by those which obtain in this state. Manifestly, the cause of action having arisen in the state of Nebraska, and being predicated upon the negligence of the defendant, we must look to the laws of Nebraska to define the duties which the defendant was owing to the plaintiff, and for the alleged breach of which the plaintiff sues. But the laws of Nebraska follow the case no further, if it be instituted in a sister state. The laws of no state can be extraterritorial. In so far as they create a cause of action within the state, such cause of action will be recognized in a sister state, and will be enforced in its courts, not according to the procedure of Nebraska, but according to the procedure of the sister state itself; and this includes all the details of a trial, both in pleading and in procedure. It necessarily includes methods of proof and rules of evidence. When the cause of action was created, the function of Nebraska law was done, unless the plaintiff chose to enforce his cause of action there. To apply Nebraska methods of proof to a cause of action in this state would necessarily be impracticable. The courts of one state can take notice of the laws of another state only so far as the same are pleaded and introduced in evidence. In stating his cause of action, the plaintiff pleaded such statutes. But it would be quite impossible for either party to foresee the multitude of questions that

1. COURTS: comity
between states:
procedure
governing.

would arise in the course of a trial as to the admissibility and weight of various items of evidence, or as to degree or burden of proof. A party could get no benefit from the Nebraska law without pleading it. The appellants aptly excuse their failure to plead the Nebraska law in this case because the necessity of it could not have been foreseen. This sufficiently illustrates how impracticable it would be for the courts of one state to apply the laws of procedure and evidence of another state.

To put the subject in a few words, the laws of no state have extraterritorial force. They are recognized in a sister state as a matter of comity only. Such comity is always extended in recognition of a cause of action created under the substantive law of another state. It is impracticable to apply in one state the remedial provisions of another for the proof and enforcement of a cause of action. Comity does not require the impracticable, and does not, therefore, extend to remedial provisions except where a particular remedy is so incorporated into the creating statute as to become a part of the cause of action. The line of demarcation between the remedial and the substantive is not always sharply apparent. These blend, to some extent, within a border-line zone. Questions of "comparative negligence" and "prima-facie negligence" are on this border line, and on its "impracticable" side. For fuller discussion of these questions see *Knight v. Moline, E. M. & W. R. Co.,* 160 Iowa 160; *Johnson v. Chicago & N. W. R. Co.,* 91 Iowa 248.

III. The appellants complain of Instruction No. 12. This instruction dealt with the question of contributory negligence. It laid the burden upon the plaintiff to prove freedom from contributory negligence. It contained the following:

"You are also instructed that the failure of the defendants to ring the engine bell or blow the engine whistle, as provided by the statutes of Nebraska, as the engine approached the crossing in question, if there was such failure, did

2. RAILROADS: accidents at crossings: contributory negligence: absence of signals: effect.

not absolve the deceased, Albert Rastede, or Rudolph Johnson, the driver of the automobile, from the duty of exercising reasonable and ordinary care and diligence for their own safety; *but they would have been justified in expecting that, in the operation of trains and locomotive engines, the defendant railroad and its servants, including the engineer defendant, T. J. De*

*Mers, engaged in such operations, would at all times make an effort to perform those duties which are required by law; and the absence of statutory signals by ringing the engine bell or blowing the engine whistle, if not rung or blown, may have a legitimate bearing upon the question as to whether or not the deceased, Albert Rastede, and the said Rudolph Johnson, acted with reasonable and ordinary care and diligence;* and it is for you to determine, under all the evidence and facts shown upon the trial, whether or not they or either of them by their own negligence caused or contributed to the accident and the resulting injuries to the death of Albert Rastede."

The particular objection is directed to the italicized portion above set forth. It is argued that this lifted from the plaintiff the burden of proof, and made the contributory negligence of the deceased dependent upon the absence of negligence of the defendants. We do not think the instruction is fairly subject to the criticism made. The court expressly instructed that the deceased was not justified in relying upon the conduct of the defendant's employees to the exclusion of reasonable care on his own part. Instructions in substantially this form have been heretofore considered by us, and sustained. *Alitz v. Minneapolis & St. L. R. Co.*, 196 Iowa 437; *Johnson v. Omaha & C. B. St. R. Co.*, 194 Iowa 1230.

IV. Instruction No. 13 is complained of. This instruction dealt with the "no-eyewitness" rule. This instruction included the following:

"You are further instructed in this case that, if you believe from the evidence that, owing to darkness, or for any other reason, no witness observed the acts and conduct of the said Albert

**3. NEGLIGENCE:** contributory negligence: eyewitnesses: improper submission of issue.

Rastede and Rudolph Johnson, or observed whether or not they looked and listened for an approaching train, then you will have the right to consider the instinct of self-preservation, in connection with the other facts and circumstances appearing in evidence, in determining whether or not they exercised reasonable and ordinary care for their own safety when they came into the zone of danger as they approached the railroad crossing where the accident occurred. But, if you believe that, while they were approaching said crossing, and during the time the duty devolved upon them and each of them to look and listen

for approaching trains, they were under *the scrutiny of some credible witness, who observed their* acts and conduct or the acts and conduct of either of them at such time, then you are bound by the testimony given by such witness on such subject, and should not consider the inference that, at the time covered by such testimony, the said Albert Rastede and Rudolph Johnson, or one of them, as the case may be, was prompted in his or their conduct by the instincts of self-preservation, if such inference is inconsistent with the acts and conduct shown by such direct testimony.''

Criticism is directed especially to the italicized portion above. As an abstract proposition, the foregoing instruction is not to be approved. Its effect is to surrender to the jury the prerogative and responsibility of the court to determine when the rule in question comes into vogue. If there be eyewitness to the circumstances of the accident, this bars the operation of the rule of presumption. In such case, it is not for the jury to invoke it by merely rejecting such evidence as not *credible*. Complaint is also directed to another portion of the instruction not above set forth, which refers to ''*direct* credible testimony.'' Criticism is made of the use of the word ''direct.'' The instruction is not in error at that point. The testimony of an eyewitness is necessarily direct, and it is properly so described, as will be noted from our previous cases hereinafter cited.

Notwithstanding the error herein recognized, we think that the defendant suffered no prejudice thereby, and could suffer none thereby, upon the record before us. There were no eyewitnesses to this accident, within the meaning of the law. The court therefore should have so stated to the jury in connection with the rule of presumption. In permitting the jury to pass upon that question, the instruction was prejudicial to the plaintiff, rather than to the defendant. In stating our conclusion at this point, brief reference should be made to the record. The only persons who were in a position to observe the accident, if visibility had permitted it, were the engineer and fireman of the defendant and Mrs. Payne, the sole surviving occupant of the automobile. Neither the engineer nor the fireman was able to see any circumstance attending the accident. Mrs. Payne was examined as a witness. She testified to her occupancy of the left end of the rear seat of the automobile. It does not appear

that she knew anything of the location of the crossing, or that they were approaching a crossing at any time. She testified that it was cloudy and dark, that they were traveling slowly, and that the automobile "was not making any noise." She heard no locomotive whistle or bell. She saw nothing except a "black object" at the moment of the collision. She testified:

"I did not notice and could not tell whether or not others who were in the car with me had been listening and looking. I don't know what they were doing as to looking and listening. Just at the time of the collision, Mr. Johnson was driving the car, and apparently watching what he was doing; and just what he was doing or looking at or whether he was listening, I have no knowledge."

Appellants' argument reflects somewhat upon the good faith of this testimony. If it were fairly subject to challenge on that ground, it could only be tested by submission to the jury; and this is the very thing that appellants complain of. The testimony is not incredible, by any means, when the events through which the witness immediately passed are taken into consideration. It is a matter of observation to the courts and to attorneys that a person who passes through a serious accident not infrequently suffers obliteration of memory, not only of the sequences of the accident itself, but of an appreciable period of time preceding them. This witness found herself after the accident on the west side of the railroad track, apparently without conscious knowledge of how she got there. Upon the record herein, we see no more reason for designating Mrs. Payne as an eyewitness than there would be for so designating the defendant-engineer and his fireman. None of them saw anything. The case at this point is governed by our previous decisions. *Phinney v. Illinois Cent. R. Co.*, 122 Iowa 488; *Lunde v. Cudahy Packing Co.*, 139 Iowa 688. In the first case above cited, a brakeman was thrown from the flat car by the sudden stopping of the train. The conductor was at his side upon the same flat car when the accident happened, but was not able to testify to any fact or circumstance bearing upon the question of reasonable care used by the brakeman to save himself from falling. The conductor did save himself from the effects of the same concussion. It was held by us to be a case of "no eyewitness." A somewhat similar situation was presented in the *Lunde* case cited.

It is our conclusion that the undisputed facts appearing in this record entitled the plaintiff to the rule of inference which is referred to in the instruction complained of. This being so, appellants suffered no prejudice from the instruction.

V. Complaint is directed to Instruction No. 15. This deals with the measure of damages. The complaint is that the court failed to instruct the jury as to a detailed method of arriving at the present worth of future damages to be sustained by the "next of kin." It is not claimed that the instruction carried affirmative error. It is good as far as it goes. No request was made for a more specific instruction. The instruction has the support of our previous holdings. *Greenway v. Taylor County*, 144 Iowa 332; *Hutcheis v. Cedar Rapids & M. C. R. Co.*, 128 Iowa 279. There was no error at this point.

4. TRIAL: instructions: correct but not detailed.

VI. Lastly, it is urged by appellants that a verdict should have been directed in their favor on the ground that the decedent was not free from contributory negligence, and that this appears clearly from the undisputed physical facts. It is naturally argued that, if the decedent looked, he must have seen the approaching train, and that the physical facts surrounding the event are conclusive on that question. We think they are far from it. The negligence of the defendant was of an exceptional kind. Some courts have gone so far as to hold that the operation of a train at night over a crossing without lights on the head of the train was a negligence of such character as of itself tended to negative contributory negligence of the injured party. *Stanley v. Durham & N. R. Co.*, 120 N. C. 514 (27 S. E. 27); *Norris v. Atlantic C. L. R. Co.*, 152 N. C. 505 (67 S. E. 1017, 27 L. R. A. [N. S.] 1069); *Gorton v. Harmon*, 152 Mich. 473 (116 N. W. 443); *Schremms v. Pere Marquette R. Co.*, 145 Mich. 190 (108 N. W. 698); *Pittsburgh, C., C. & St. L. R. Co. v. Terrell*, 177 Ind. 447 (95 N. E. 1109); *Amanta v. Michigan Cent. R. Co.*, 177 Mich. 280 (143 N. W. 76); *Chicago, R. I. & P. R. Co. v. Moon*, 88 Ark. 231 (114 S. W. 228). Granted that, if this accident had happened in the daytime, the decedent must have seen the train, if he had looked before entering upon the crossing, it by no means follows that this would be true in the night. If, at a distance of 25 or 50 feet from the crossing, the decedent had looked up the

5. RAILROADS: accidents at crossings: contributory negligence: red light on tender.

track, what would he have seen? *A red light.* It will not be claimed that he could quickly discover that such red light was moving toward him, or that it was moving at all. This was a false signal. It had a definite significance in the railroad service. It was an assurance that the contemplated movement of the train was in the other direction. It was not a warning of any danger to a person on the crossing. Its usual function was to guard the rear of that particular train against collision from that direction. If, therefore, the decedent could have survived long enough to tell his story, and had testified that he saw the red light, and at once felt assured thereby that the crossing was safe from that direction, could it be claimed that he was guilty of contributory negligence, as a matter of law? We think not. The most that can be said of the conclusiveness of the physical facts is that, if the deceased had looked, he would have seen a red light.

Upon the whole record, it cannot be said that the circumstances of the case are inconsistent with due care on the part of the deceased. The plaintiff was, therefore, clearly entitled to go to the jury, both on the question of the defendant's negligence and on that of the contributory negligence of the decedent or his driver.

It is further complained, however, that the verdict was excessive. The jury returned a verdict for $22,500, which the court reduced to $14,500, and, upon plaintiff's election to remit, entered judgment accordingly. It is contended that the judgment was still too large, and that the larger verdict of the jury indicated passion and prejudice. We do not think that it can be said that a verdict of $14,500 was necessarily excessive. His two children were motherless and very young. Approximation was the best that could be done, in any event, in arriving at the amount of damages. In reducing the verdict and requiring the plaintiff to remit, we think the trial court worked substantial justice.

6. NEW TRIAL: verdict: excessiveness: $14,500.

We find no prejudicial error in the record, and the judgment is, accordingly, affirmed.—*Affirmed.*

STEVENS, DE GRAFF, and MORLING, JJ., concur.