### HAGAN & CUSHING CO. v. WASHINGTON WATER POWER CO. *
#### No. 8737.

Circuit Court of Appeals, Ninth Circuit.
Nov. 4, 1938.

*Rehearing denied Dec. 27, 1938.

Maurice H. Greene, of Boise, Idaho, and J. H. Felton, of Moscow, Idaho, for appellant.

John P. Gray and W. F. McNaughton (of Gray & McNaughton), both of Coeur d'Alene, Idaho, and A. E. Russell and Alan G. Paine, both of Spokane, Wash., for appellee.

Before GARRECHT and HANEY, Circuit Judges, and ST. SURE, District Judge.

HANEY, Circuit Judge.

This is an appeal from a judgment in favor of appellee in a suit brought by appellant to recover damages for destruction of its packing plant by fire alleged to have been caused by appellee's negligence.

Appellant is an Idaho corporation, organized in 1909 to carry on a meat slaughtering and packing business at Moscow, Idaho. The cost of its buildings which had been constructed from 1909 to 1936 was $48,727.47, and the cost of machinery and equipment in the plant on December 31, 1935, was $38,015.28.

Appellee is a public utility, engaged in the generating, sale and distribution of electrical current. Appellant was a user of such current for many years prior to 1936, and in addition, had employed appellee to install wiring in the plant, and make repairs in electrical equipment. About 1934, appellee abandoned the sale and installation of electrical equipment in Moscow.

At appellant's plant there was a compressor room, constructed of concrete with a reinforced floor and ceiling. In that room two compressors, or ice machines, were located, which were operated by belts from two motors in the motor room. The motor room had a concrete floor and a wood frame work, covered with galvanized iron. There were three motors in the motor room. There was an opening in the wall between the two rooms, through which ran the belts from the motors to the compressors. The opening was large enough to permit passage of a person. Two of appellee's employees had been in the compressor room, installing a new meter within a month prior to August 22, 1936.

Two of the motors were three phase, ten horse power capacity motors, and were used to operate the compressors. The other motor was a stored motor. About 3:30 p. m. on August 22, 1936, one of' appellant's employees examined both of the motors, found them running smoothly, moderately warm as usual, without bearing knocks, and then oiled them. The plant closed that afternoon about the usual time. The motors were left operating the compressors, as usual, after the plant closed.

About 7 p.m. on August 22, 1936, some of the electric lights in Moscow began to flicker and die down, and finally went out. After about twenty or thirty minutes thereafter electric service was restored, and some people saw smoke arising from appellant's plant. The fire was discovered in the motor room. Thereafter, the fire destroyed practically the whole plant.

This action was commenced on September 24, 1936, to recover $136,368.46. The amended complaint alleged that appellee "negligently and carelessly carried over its wires, in the circuit which supplied current to the said packing house, a current of electricity which was unsuited to the operation of the motors therein contained"; that the "improper condition of electrical current herein complained of immediately and proximately caused the two motors * * * to become greatly overheated"; and that such "overheating continued to a point where the motors burst into flames, and the fire was promptly communicated to the building, and resulted in the destruction of it together with its contents". It was

also alleged that appellee "was further negligent in this, that having full knowledge of the emergency, it failed to turn off the current, or warn the packing company, or to correct the disturbed condition, until such time as the packing plant was afire and the peril was no longer avoidable".

Appellee's answer denied that it was negligent, and alleged affirmatively that appellant was guilty of contributory negligence "in that it maintained in its plant motors that were old and out of repair, improperly connected, without the proper or any oil necessary to proper operation of the same".

At the conclusion of all the evidence, appellee moved for a non-suit, which was denied, and then moved for a directed verdict, which was granted. Judgment was entered for appellee on May 24, 1937. Appellant then brought this appeal.

Both parties concede that the cause of action pleaded was based on the doctrine of res ipsa loquitur. Appellant here contends that under that doctrine it was entitled to a full and complete explanation as to why its motors should have caught fire, and that there was no such evidence.

■ The law of Idaho governs here. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58/S.Ct. 860, 82 L.Ed. 1290; Rosenthal. v. New York Life Insurance Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330; New York Life Insurance Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. 1329; Hudson v. Moonier, 304 U.S. 397, 58. S.Ct. 954, 82 L.Ed. 1422. In Idaho the doctrine of res ipsa loquitur means that "the circumstances attendant upon an accident are of themselves of such character as to justify a jury in inferring negligence as the cause of the accident". Wilson v. St. Joe Boom Co., 34 Idaho 253, 200 P. 884, 888. See, also, Warner v. Pittsburgh-Idaho Co., 38 Idaho 254, 220 P. 492, 494; Martin v. Brown, 56 Idaho 379, 54 P.2d 1157, 1158. Under that rule, while the jury may draw the inference of negligence, it is not compelled to do so, and if the doctrine of res ipsa loquitur is applicable at all, the case should have been submitted to the jury.

■ In Brunell v. Mountain States Power Co., 9 Cir., 81 F.2d 305, 308, this court held that the res ipsa loquitur doctrine was not applicable where there was intervention of a third party. There ap-

pears to be no decision on that point in Idaho, and we therefore believe the rule laid down by this court should be here followed.

■ There is no conflict in the evidence regarding the fact that the motors were burned because appellee's transmission line thereto delivered electricity to the motors by single phase current, rather than by three phase current, and that the "single phasing" was caused by an automobile which was driven against a pole, some distance away from appellant's plant, which caused one of the three transmission lines to wrap around another. Therefore, under Brunell v. Mountain States Power Co., supra, the doctrine of res ipsa loquitur is not applicable.

The question is raised by appellant as to whether there is any substantial evidence that appellee was negligent in the transmission of power.

■ Appellee's power source to Moscow consisted of three lines carrying 60,000 volts. That current passed through an air switch, which is manually operated, through expulsion fuses (one on each line) which operate to open the line when, due to some disturbance in the circuit, the temperature of metal in the fuses rises to the point when such metal melts. If only one of the fuses operates or "blows", the circuit still operates, but on single phase. After the current passes through the expulsion fuses it entered a transformer, where the voltage was reduced to 2300 volts, and then went to a provision for connecting thereto by feeder lines, which is called the Moscow "bus". One feeder line, after leaving the bus, ran through an oil circuit breaker, and then to various places in Moscow, including appellant's plant. Another feeder line ran from the bus, through a circuit breaker, and then to the towns of Troy, Kendrick and Bovill.

The circuit breakers mentioned so operate that all three lines are opened, rather than one, and thus the lines beyond such a circuit breaker carry no current, after the circuit breaker has operated.

On the day in question, the lines on the feeder line to Troy, Kendrick and Bovill tangled. Before the circuit breaker on that line worked, one of the expulsion fuses on the power source line "blew", thus causing the single phase condition on the feeder lines. Subsequently, the circuit breaker on the feeder line to Troy, Kendrick and

Bovill operated, thus opening the circuit to those towns. Thereafter, appellee's employees opened the air switch, and replaced the expulsion fuse.

There is no dispute concerning the fact that the single phase condition would cause motors to heat and become destroyed. In fact there was evidence that three or four other motors in Moscow either burned or smoked. In addition, the evidence showed that had there been a circuit breaker used instead of explusion fuses, and had such circuit breaker properly operated, there would have been no single phase condition.

Witness Batchelor, an expert, testified for appellant that the usual practice in a substation as important as the Moscow substation was to use a circuit breaker, and that explusion fuses at such stations were obsolete. Numerous experts for appellee testified to the contrary, upholding the practice followed by appellee.

Idaho Code Ann. 1932, § 59-302 provides in part:

"Every public utility shall furnish, provide and maintain such service, instrumentalities, equipment and facilities as shall promote the safety * * * of its patrons * * *."

The Supreme Court of Idaho has declared that: "Electricity is recognized as one of the most destructive agencies we have, and the highest degree of care and diligence is required by those who are operating electrical plants, in order to avoid injury to person and property". Younie v. Blackfoot Light & Water Co., 15 Idaho 56, 96 P. 193, 195. See, also, Gagnon v. St. Maries Light & Power Co., 26 Idaho 87, 141 P. 88, 92; Ellis v. Ashton & St. Anthony Power Co., 41 Idaho 106, 238 P. 517, 520. Thus, the question is whether or not there is any substantial evidence that appellee breached its duty to use "the highest degree of care and diligence * * * in order to avoid injury" to appellant's property.

The rule in the federal courts is that "Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury". Gunning v. Cooley, 281 U.S. 90, 93, 50 S.Ct. 231, 233, 74 L.Ed. 720. On the other hand "Where uncertainty arises either from a conflict of testimony or because the facts being undisputed, fair-minded men may honestly draw different conclusions from them, the question is not one of law, but of fact to be settled by the jury". Best v. Dist. of Columbia, 291 U.S. 411, 415, 54 S.Ct. 487, 489, 78 L.Ed. 882. The rule in Idaho is substantially the same. Keane v. Pittsburg Lead Mining Co., 17 Idaho 179, 105 P. 60, 63; Brown v. Jaeger, 46 Idaho 680, 271 P. 464.

Here although Batchelor's testimony was contradicted, the jury might well have believed it. We think his evidence if believed is sufficient to support a verdict:

The evidence here shows that appellee did not unreasonably delay replacement of the "blown" expulsion fuse. We think appellant's contention to the contrary is not supported by evidence.

Appellee contends that the sole cause of the injury was the failure of appellant to maintain an overload device for the motors in proper working condition. Little need be said regarding this contention, because the evidence was to the effect that had the single phase condition been absent, there would have been no injury.

Appellee further contends that the trial court properly directed a verdict because it was shown that an overload device would have protected the motors, and that appellant had failed to keep its overload device in proper working condition.

Ida. Code Ann. 1932, § 5-816 provides that "In all actions hereafter brought for damages for injury to person or property, contributory negligence is a matter of defense, and it is not necessary for the plaintiff to either plead or prove the negative of contributory negligence". Appellant would be guilty of contributory negligence if it failed to use ordinary care in the protection of its property.

Assuming that the failure to maintain an overload device in proper working condition would constitute negligence, a point upon which we express no opinion, the fact remains that the evidence is in conflict as to whether or not the device was in proper working condition. The overload device on one motor operated properly. On the other, the device did not operate, and that motor burned, apparently causing the first motor to burn. There was evidence that the overload device lacked oil and was corroded and had not been inspected for two or three years prior to the fire. The witness who testified as to lack of oil, and the corrosion, refused to testify that such

618

a condition would prevent operation of the device. For appellant, witness Batchelor testified that lack of oil would make the device operate faster, and that the corrosion would not prevent its operation. If believed, this was substantial evidence to the effect that appellant was not guilty of contributory negligence. Hansen v. Standard Oil Co. of California, 55 Idaho 483, 44 P.2d 709, 711.

We think the court below erred in directing a verdict for appellee.

The judgment is reversed and the cause is remanded for a new trial.