**LEE v. CANNON MILLS CO. et al.**
**No. 4529.**

Circuit Court of Appeals, Fourth Circuit.

Nov. 6, 1939.

Guy T. Carswell, of Charlotte, N. C. (F. Marion Redd, of Charlotte, N. C., on the brief), for appellant.

Hayden, Clement, of Salisbury, N. C. (W. H. Beckerdite, of Kannapolis, N. C., and W. T. Shuford, of Salisbury, N. C., on the brief) for appellees.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

The gist of this action of slander is that H. A. Arthurs, a night watchman in the employ of the Cannon Mills Company, stated to T. O. Sills, an assistant master mechanic in the mill, that O. A. Lee, plaintiff in the District Court and a mechanic in the company's employ, had taken some tools from the supply room of the mill, with the intent on Arthurs' part to charge the plaintiff with the crime of larceny. Both the company and Arthurs were sued as defendants. The jurisdiction of the court was based on the diverse citizenship of the parties. The District Court, on motion of the defendants offered at the close of the plaintiff's case and again at the close of all the testimony, entered a judgment that the plaintiff's action be dismissed as of non-suit, on the ground that the plaintiff was not entitled to recover against either defendant. On this appeal we need consider only the correctness of the judgment as to the corporation since the appellant announced at the bar of this court that he did not desire to press the appeal as to the defendant Arthurs if the judgment as to the corporation should be sustained.

The Cannon Mills Company furnished the mechanics employed by them some of the tools needed in the work, and sold them others. The latter were kept in a locked supply room and could be secured only from the foreman in charge who was required to report the cost price of the tools so that it might be deducted from the employees' wages. The plaintiff's account of the circumstances, under which the statement complained of was made, was substantially as follows: The plaintiff had been employed by the company for approximately four years prior to March,

1938. Early in that month he procured a wrench and a steel tape from the supply room in the regular manner, and with the knowledge and consent of the foreman in charge. A day or so later Arthurs, in the performance of his duty as night watchman, reported to T. O. Sills, assistant master mechanic, that the plaintiff had admitted that he had taken a wrench, a steel tape and some chisels from the supply room, gaining access to the room, in violation. of the company's rules, by removing the pins from the hinges of the door. In fact, the plaintiff had not made this statement to Arthurs but had told him only that the tools had been gotten from the supply room, intending to convey the idea that they had been gotten in the regular manner. Sills told the plaintiff of Arthurs' report and discharged the plaintiff, who thereupon was paid for his prior services. In the conversation at the time of his discharge .the plaintiff addressed a vile epithet to Sills. The plaintiff then went to the superintendent of the mill and requested an investigation. The superintendent called in Arthurs, Sills and others, and Arthurs repeated his prior statement. Another employee produced a regular order for the wrench, but it transpired that the plaintiff 'had not been charged with the wrench and had not' paid for it when he received his last payment of salary. The superintendent closed the investigation and ordered the plaintiff to leave the premises. The plaintiff replied that he had been accused of stealing, whereupon the superintendent said that he was not accusing the plaintiff of having stolen anything. The plaintiff, accompanied by his sister, asked the superintendent to put that statement in writing, and the superintendent, after some protest, wrote a letter to the plaintiff's sister, which was received by mail on the following day, to the effect that he was not accusing her brother of stealing anything from the mill. During the investigation the superintendent's attitude was very rude.

Plaintiff and his sister subsequently went to see the vice president of the defendant corporation, who had supervision of all the mills, and stated his case, and exhibited the letter from the superintendent. The vice president took the letter and refused to return it, and the plaintiff was able to recover it only by force after a scuffle with the vice president. The latter then caused a policeman to be called, and when he came, requested him to remove the plaintiff from the office, saying that he was not preferring any charges against the plaintiff, but desired to have him removed. The plaintiff was taken to police headquarters but no charges were preferred against him. The plaintiff had never taken anything from the. company at any time without securing an order for it, except what had been given him by the mill.

There was evidence on the part of the defendants tending to show that the plaintiff, two nights before he was discharged, told the defendant Arthurs that there was a note from a girl to an employee in the supply room, and that he was going to pull the bolts from the hinges of the door and enter and read the note; that he made his entrance in this way and later showed Arthurs certain tools which he had gotten out of the room and said that he was going to take them home. Later he gave Arthurs a new steel tape which he said he did not need. Arthurs reported the matter to the foreman of the supply room and gave him the steel tape. The foreman of the supply room testified that Arthurs had made the report and in turn delivered the steel tape to an overseer. The latter made a report to the assistant master mechanic. There was other testimony on the part of the defendant tending to show that the plaintiff had been seen coming out of the supply room at three o'clock in the morning in November, 1937, with certain tools, and also that the plaintiff had told other employees that he could get into the supply room by lifting the bolts from the hinges of the door and that he was not going to buy any more tools. The plaintiff on his own behalf denied all of the above transactions and conversations tending to show that he had made improper entrances into the supply room.

The circumstances of the case present a situation to which the rule as to privileged communications in the law of libel and slander is applicable. The words complained of were uttered by an employee of the corporation to a superior official and related to a matter in which both speaker and hearer had a duty and an interest, as employees of the business. The general rule of qualified privilege is stated by the Supreme Court of the State, whose law must be applied in the determination of this controversy, in Harrison v. Garrett, 132 N.C. 172, 176, 43 S.E. 594, 596, as follows: "Any communication be-

tween employer and employé is protected by this privilege, provided it is made bona fide about something in which (1) the speaker or writer has an interest or duty; (2) the hearer or person addressed has a corresponding interest or duty; and provided (3) the statement is made in protection of that interest or in the performance of that duty. There must also be an honest belief in the truth of the statement. When these facts are found to exist, the communication is protected by the law, unless the plaintiff can show malice on the defendant's part; the burden in this respect being upon the plaintiff." See also Riley v. Stone, 174 N.C. 588, 94 S.E. 434; Alexander v. Vann, 180 N.C. 187, 104 S.E. 360; Hartsfield v. Hines Co., 200 N.C. 356, 157 S.E. 16.

■ The plaintiff concedes that this rule of law governs the case, but contends that there was sufficient evidence to show that the defendants were actuated by malice toward him, and that the case should therefore have been submitted to the jury. Taking the plaintiff's evidence as true, it is said that malice might be inferred from the falsity of the accusation made by Arthurs, from the rude conduct of the superior officers of the defendant while handling the investigation, and from the introduction of evidence by the defendants tending to show that on other occasions the plaintiff had entered the store room and taken tools without permission.

It may be granted for the purposes of this case that the jury might have found that Arthurs' statement was knowingly false, and might have inferred that he was actuated by malice in making it (see Ramsey v. Cheek, 109 N.C. 270, 274, 13 S.E. 775); but it does not follow that the company was actuated by malice when its supervising officials received the statement and governed their actions accordingly. It became their duty to decide which of the conflicting stories was true, and there is no evidence that in making their decision they were actuated by bad faith or by the malicious purpose to injure the plaintiff. During the investigation, the company's officials carefully refrained from adopting or repeating the accusation of the night watchman; and although the plaintiff complains of rude conduct on their part, his own testimony shows that he used insulting language to one of his superiors, and physical violence to another, so that it was finally necessary to call a police officer to eject him. The defendants did offer corroboration of the story of the watchman in the testimony of other witnesses that on prior occasions the plaintiff had entered the storeroom and taken tools therefrom in the same manner as was described by the watchman on whose statement the case of the plaintiff is based; but this testimony tended to show good faith rather than malice on the part of the defendant. There was no error on the part of the District Court in concluding that the plaintiff had failed to make out a case against the corporate defendant, and the judgment of the court is therefore affirmed.