## SAMPSON v. CHANNELL.
### No. 3454.

Circuit Court of Appeals, First Circuit.

March 27, 1940.

Writ of Certiorari Denied June 3, 1940.

See 60 S.Ct. 1099, 84 L.Ed. ——.

Walter R. Donovan, of Boston, Mass. (James T. Connolly, of Boston, Mass., on the brief), for appellant.

Hubert C. Thompson, of Boston, Mass. (John C. Twomey, of Boston, Mass., on the brief), for appellee.

Before WILSON and MAGRUDER Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

On this appeal the question presented may be stated simply, but the answer is not free from difficulty. A car driven by defendant's testator collided in Maine with a car driven by the plaintiff, injuring both the plaintiff and his wife, who was a passenger. The wife sued and recovered. judgment. We affirmed that judgment in Channell v. Sampson, Dec. 29, 1939, 1 Cir., 108 F.2d 315. In this, the husband's action,
the jury found specially that the plaintiff's injury was caused by the negligence of defendant's testator, but brought in a general verdict for the defendant on the issue of contributory negligence. Judgment was entered for the defendant.

The action was brought in the federal district court for Massachusetts, there being the requisite diversity of citizenship. On the issue of contributory negligence the plaintiff requested the court to charge the jury, in accordance with the local Massachusetts rule, that "the burden of proving lack of care on the part of the plaintiff is on the defendant". This the court declined to do, but upon the contrary charged, in accordance with the Maine law, that the burden was upon the plaintiff to show affirmatively that no want of ordinary care on his part contributed to cause his injuries. The sole question raised is as to the correctness of this charge, and refusal to charge as requested.

Inquiry must first be directed to whether a federal court, in diversity of citizenship cases, must follow the applicable state rule as to incidence of burden of proof. If the answer is in the affirmative, the further point to be considered is whether the applicable state rule here is that of Massachusetts, where the action was brought, or Maine, where the accident occurred.

It would be an over-simplification to say that the case turns on whether burden of proof is a matter of substance or procedure. These are not clean-cut categories.[1] During the reign of Swift v. Tyson, 1842, 16 Pet. 1, 10 L.Ed. 865, the federal courts in diversity of citizenship cases consistently held that the defendant had the burden of proving the plaintiff's contributory negligence, even though the suit arose in a state whose local rule was the contrary. Pokora v. Wabash Railway Co., 292 U.S. 98, 100, 54 S.Ct. 580, 78 L.Ed. 1149; Miller v. Union Pacific, 290 U.S. 227, 232, 233, 54 S.Ct. 172, 78 L.Ed. 285; Hemingway v. Illinois Central Railroad Co., 5 Cir., 114 F. 843, 846; Armour & Co. v. Carlas, 2 Cir., 142 F. 721, 722; New Ætna Portland Cement Co. v. Hatt, 6 Cir., 231 F. 611, 615–16; Harmon v. Barber, 6 Cir., 247 F. 1, 6; Bauman v. Black & White Town Taxis Co., 2 Cir., 263 F. 554; Maher v. Chicago, M. & St. P. Rail-

---

[1] See Cook, "Substance" and "Procedure" in the Conflict of Laws (1933) 42 Yale L.J. 333; McClintock, Distinguishing Substance and Procedure in the Conflict of Laws (1930) 78 U. of Pa. L. Rev. 933; Tunks, Categorization and Federalism: "Substance" and "Procedure" after Erie Railroad v. Tompkins (1939) 34 Ill.L.Rev. 271.

way Co., 7 Cir., 278 F. 431, 434; Cook Paint & Varnish Co. v. Hickling, 8 Cir., 76 F.2d 718, 721. See Central Vermont Railroad Co. v. White, 238 U.S. 507, 512, 35 S.Ct. 865, 59 L.Ed. 1433, Ann.Cas.1916B, 252; First National Bank v. Liewer, 8 Cir., 187 F. 16, 18. They avoided having to apply the local rule under the Conformity Act, R.S. § 914, 28 U.S.C.A. § 724, by saying that burden of proof was not a mere matter of procedure but concerned substantive rights, as to which the federal courts on a matter of "general law" were free to take their own view. See Herron v. Southern Pacific Co., 283 U.S. 91, 93, 94, 51 S.Ct. 383, 75 L.Ed. 857. The question of classification also arose where suit was brought in one state on an alleged tort committed in another state. But here it was generally held, in the state courts at least, that burden of proof as to contributory negligence was a matter of pro-

cedure; hence the rule of the forum would be applied despite a contrary rule of the locus delicti. Levy v. Steiger, 233 Mass. 600, 124 N.E. 477; Smith v. Brown, Mass., 19 N.E.2d 732; Chicago Terminal R. R. v. Vandenberg, 164 Ind. 470, 73 N.E. 990; Rastede v. Chicago, St. P., M. & O. Railway, 203 Iowa 430, 431, 437, 212 N.W. 751; Jenkins v. Railway, 124 Minn. 368, 373, 145 N.W. 40; Menard v. Goltra, 328 Mo. 368, 40 S.W.2d 1053. See Helton v. Alabama Midland, 97 Ala. 275, 12 So. 276; St. Louis & S. F. R. Co. v. Coy, 113 Ark. 265, 168 S.W. 1106; Prinn v. De Rice, 1930, 129 Me. 479, 149 A. 580; Pennsylvania Co. v. McCann, 54 Ohio St. 10, 42 N.E. 768, 31 L.R.A. 651, 56 Am.St. Rep. 695. Contra: Olson v. Omaha & C. B. S. Railway Co., 131 Neb. 94, 267 N.W. 246; Precourt v. Driscoll, 85 N.H. 280, 157 A. 525, 78 A.L.R. 874.[2] Cf. Lykes Bros. SS. Co. v. Esteves, 5 Cir., 89 F.2d 528; Dela-

---

[2] In American Law Institute Restatement of Conflict of Laws, § 595, Comment a, it is first stated that the law of the forum governs matters relating to burden of proof. It is then stated that if by the lex loci delicti the requirement that plaintiff must prove himself free from fault is "interpreted as a condition of the cause of action itself", then the forum will apply the foreign rule. But to say it is a condition of the cause of action seems to be merely another way of saying that the plaintiff has the burden of proof; for if this burden is upon the plaintiff, his recovery is necessarily conditioned upon his convincing the jury of his freedom from contributory fault. The Olson case, cited in the text, relies upon this section of the Restatement for its authority. In Precourt v. Driscoll, supra, also cited in the text, the New Hampshire court is affected by the same curious form of statement, which apparently was derived originally from Central Vermont Railway v. White, 238 U.S. 507, 512, 35 S.Ct. 865, 59 L.Ed. 1433, Ann.Cas.1916B, 252. A similar verbal twist could be used to show that a rule putting the burden on the defendant is a matter of substance. It can be said that where a defendant has negligently caused harm, the requirement that he must affirmatively establish the plaintiff's contributory negligence is a "condition" of his defense. But putting it this way really proves nothing.

If by the lex loci, contributory negligence is not a complete defense but goes only in mitigation of damages, this is clearly a matter of substance as to which the forum would follow the foreign rule.

Fitzpatrick v. International Ry. Co., 252 N.Y. 127, 169 N.E. 112, 68 A.L.R. 801; Caine v. St. Louis & S. F. Ry., 1923, 209 Ala. 181, 95 So. 876, 32 A.L.R. 793. So, if by the lex loci, contributory negligence is no defense where defendant had a "last clear chance", this again is clearly a matter of substantive law. But where the lex loci and the lex fori agree that the plaintiff's contributory negligence will bar him from recovery, it is not an irrational distinction to say that the question of who has the burden of establishing the facts on the issue of contributory negligence is one of procedure to be governed by the rule of the forum. That distinction is pointed out in Kingery v. Donnell, 222 Iowa 241, 250, 268 N.W. 617, 622. It may be stated thus: procedural rules are those which concern methods of presenting to a court the operative facts upon which the legal relations depend; substantive rules, those which concern the legal effect of those facts after they have been established. See Stumberg, Conflict of Laws (1937) 128. It is a distinction taken by perhaps the majority of the state courts in conflict of laws cases. It is based upon an obvious difference of degree. Nevertheless, because of the influence which the incidence of burden of proof often has on the outcome of litigation, the better view would seem to be that in these conflict of laws cases, the forum should apply the rule of the locus delicti as to burden of proof. In the analogous situation, where suit is brought in a federal court because of diversity of citizenship, we are holding in the present case that the federal court should apply the rule as to

ware & Hudson Co. v. Nahas, 3 Cir., 14 F.2d 56. In these two groups of cases the courts were talking about the same thing and labelling it differently, but in each instance the result was the same; the court was choosing the appropriate classification to enable it to apply its own familiar rule.

In another and quite-different setting the question of classification has frequently arisen, namely, in cases involving the constitutionality of statutes shifting from the plaintiff to the defendant the burden of proof on the issue of contributory negligence, as applied retroactively to alleged torts committed before the date of the enactment. Here the courts, federal as well as state, have upheld the statutes as so applied. Sackheim v. Pigueron, 215 N.Y. 62, 109 N.E. 109; Southern Ind. Ry. v. Peyton, 157 Ind. 690, 693, 61 N.E. 722; Wallace v. Western N. C. R., 104 N.C. 442, 10 S.E. 552; Easterling Lumber Co. v. Pierce, 235 U.S. 380, 35 S.Ct. 133, 59 L.Ed. 279. See Meeker v. Lehigh Valley Rd. Co., 236 U.S. 412, 430, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691; Luria v. United States, 231 U.S. 9, 25–27, 34 S.Ct. 10, 58 L.Ed. 101; Mobile, Jackson & Kansas City Rd. Co. v. Turnipseed, 219 U.S. 35, 42, 31 S.Ct. 136, 55 L.Ed. 78, 32 L.R.A., N.S., 226, Ann.Cas.1912A, 463; Reitler v. Harris, 223 U.S. 437, 441, 442, 32 S.Ct. 248, 56 L.Ed. 497. The courts say that such statutes introduce no change of the substantive law rule that contributory negligence is a complete bar to liability, but pertain only to the procedure by which the fact as to contributory negligence is to be established. In Easterling Lumber Co. v. Pierce, supra, a state statute, applicable to railroads, provided that from the proof of the happening of an accident there should arise a prima facie presumption of negligence. Referring to this statute, the Supreme Court said, 235 U.S. at page 382, 35 S.Ct. at page 134, 59 L.Ed. 279:

"The objection to the * * * statute is that it was wanting in due process be-

cause retroactively applied to the case since the statute was enacted after the accident occurred. But the court below held that the statute cut off no substantive defense but simply provided a rule of evidence controlling the burden of proof. That as thus construed it does not violate the Fourteenth Amendment to the Constitution of the United States is also so conclusively settled as to again require nothing but a reference to the decided cases."

It is apparent, then, that burden of proof does not fall within either category of "substance" or "procedure" by virtue of any intrinsic compulsion, but the matter has been made to turn upon the purpose at hand to be served by the classification. Therefore, inasmuch as the older decisions in the federal courts, applying in diversity cases the federal rule as to burden of proof as a matter of "general law", are founded upon an assumption no longer valid since Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, their classification of burden of proof as a matter of substance should be re-examined in the light of the objective and policy disclosed in the Tompkins case.

The opinion in that case sets forth as a moving consideration of policy that it is unfair and unseemly to have the outcome of litigation substantially affected by the fortuitous existence of diversity of citizenship.[3] Hence, the greater likelihood there is that litigation would come out one way in the federal court and another way in the state court if the federal court failed to apply a particular local rule, the stronger the urge would be to classify the rule as not a mere matter of procedure but one of substantive law falling within the mandate of the Tompkins case. There will be, inescapably, a twilight zone between the two categories where a rational classification could be made either way, and where Congress directly,[4] or the Supreme Court under authority of the Act of June 19, 1934, 48 Stat. 1064, 28 U.S.C.A. §§ 723b,

---

burden of proof obtaining in the state court.

[3] Erie Railroad Co. v. Tompkins, 304 U.S. 64, at pages 74–77, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

[4] A dictum in the majority opinion in the Tompkins case, 304 U.S. 64 at page 78, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487, may be taken to assert that Congress could not constitutionally prescribe the substantive rules of law applicable in the federal courts in diversity

of citizenship cases. It is not quite clear that this intimation was meant to be conveyed. See 52 Harv.L.Rev. 1002-1004. Certainly the court was not required to decide the point in the Tompkins case, because Congress has not asserted any such power, and indeed the only statute involved, the Rule of Decisions Act, 28 U.S.C.A. § 725, so far as it commands anything, commands the federal courts to follow the state law. However this may be, it is not doubted that

723c, would have power to prescribe a so-called rule of procedure for the federal courts.[5] Thus, if Rule 8(c) [6] of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, could be construed as imposing upon the defendant the burden of proof of contributory negligence, it seems that this would be valid and conclusive of the case at bar, despite the contrary intimation in Francis v. Humphrey, D.C., 25 F.Supp. 1, 4, 5.[7] Rule 8(c) speaks of contributory negligence as an "affirmative defense", a phrase implying that the burden of proof is on the defendant.[8] Yet the only rule laid down is one of *pleading;* the defendant must affirmatively plead contributory negligence. It is not inconsistent to require the defendant to plead contributory negligence if he wants to raise the issue, and yet to put the burden of proof on the plaintiff if the issue is raised.[9] Since Rule 8(c) contains no prescription as to burden of proof, we must look elsewhere for the answer.[10]

It seems to be said in Francis v. Humphrey, D.C., 25 F.Supp. 1, 4, and was suggested by counsel in the case at bar, that the question whether in diversity of citizenship cases burden of proof is to be classified as a matter of procedure or substantive law is to be determined by following the classification made by the courts of the state. No doubt we should look to those courts to tell us what their rule is and how it operates in local litigation. But once that is determined, the rule is the

---

Congress has power to prescribe the "procedure" for the federal courts, and this would certainly include a power to include within the domain of "procedure" subject-matter falling within the borderland between substance and procedure, and rationally capable of classification within either category.

[5] Cf. Rule 43, Federal Rules of Civil Procedure, permitting the federal courts to disregard local exclusionary rules of evidence. See Luria v. United States, 231 U.S. 9, 25–27, 34 S.Ct. 10, 58 L.Ed. 101. See Callahan and Ferguson, Evidence and the New Federal Rules of Civil Procedure, 45 Yale L.J. 622, 627–30; Leach, State Law of Evidence in the Federal Courts, 43 Harv.L.Rev. 554, 583–85.

[6] "Rule 8. General Rules Of Pleading * * * (c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. * * * "

[7] Congress in the Act of June 19, 1934 uses "practice and procedure" in contrast with "substantive rights" but does not define these terms. Where statutory language is ambiguous, the courts properly are inclined to adopt the construction put upon the language by the agency charged with carrying out the statute. This would a fortiori be true when, as here, the agency happens to be the Supreme Court of the United States. Cf. Sibbach v. Wilson & Co., 7 Cir., 1939, 108 F.2d 415. In the analogous situation where suit is brought in one state for an alleged tort committed in another, the courts generally classify burden of proof on the issue of contributory negligence as a matter of procedure and apply the lex fori. Levy v. Steiger, 233 Mass. 600, 124 N.E. 477; Chicago Terminal R. R. v. Vandenberg, 164 Ind. 470, 73 N.E. 990; and cases cited supra, in the text. Certainly the Supreme Court in construing the Act of 1934 could consider its power over procedure as embracing a subject-matter commonly though not universally classified as "procedure". See Note 2, supra.

[8] The explanation probably is that the rules were drafted before Swift v. Tyson, supra, was overruled, and the Advisory Committee assumed that the burden of proof was on the defendant because that had been the uniform federal rule under Swift v. Tyson, supra. We do not know, of course, whether the Supreme Court was aware that Swift v. Tyson, supra, was doomed to be overruled, but it may be pointed out that the Rules were transmitted by the Chief Justice to the Attorney General on December 20, 1937, and the Tompkins case was not argued in the Supreme Court until January 31, 1938.

[9] The burden of pleading does not necessarily carry with it the burden of proof. See Wigmore, Evidence 2d ed. § 2486; Clark, Code Pleading, 418. Hence conformity with the state rule regarding burden of proof is possible even though Rule 8(c) is followed with respect to pleading.

[10] But see 1 Moore, Fed.Practice, § 8.10, 3 id. § 43.02, to the effect that Rule 8(c) restates the old federal rule that the burden of proving contributory negligence is upon the defendant.

same whether it is labeled substantive law or procedure. Furthermore, as already pointed out, such a classification by the state court for one purpose does not mean that the classification is valid for another purpose. Surely the question whether a particular subject-matter falls within the power of the Supreme Court to prescribe rules of procedure under the Act of 1934, or is a matter of substantive law governed by the doctrine of the Tompkins case, cannot be foreclosed by the label given to the subject-matter by the state courts.[11]

The inquiry then must be: considering the policy underlying Erie Railroad Co. v. Tompkins, supra, would that policy best be served by classifying burden of proof as to contributory negligence as a matter of procedure or substantive law? The incidence of burden of proof may determine the outcome of the case.[12] This is true where the evidence is conflicting and the jury is not convinced either way. It is more pointedly true where, as sometimes happens, the injured person dies and no evidence is available on the issue of contributory negligence. If, in such a case, the burden of proof is on the defendant, the plaintiff wins, assuming the other elements of the cause of action are established. Miller v. Union Pacific, 290 U. S. 227, 232, 233, 54 S.Ct. 172, 78 L.Ed. 285; Holland v. B. & M. Railroad, 279 Mass. 342, 181 N.E. 217. If the burden is on the plaintiff, however, the defendant wins.[13] McLane v. Perkins, 92 Me. 39, 42 A. 255, 43 L.R.A. 487. Assuming the state rule to be one way and the federal rule the other, then the accident of citizenship becomes decisive of the litigation. The situation seems to call for the application of the rule in the Tompkins case. There is no important counter-consideration here, for the state rule can be easily ascertained and applied by the federal court without any administrative inconvenience. In thus concluding that for this purpose the incidence of the burden of proof as to contributory negligence is to be classified as a matter of substantive law, we are in harmony with the spirit of the Tompkins case, and at the same time are adhering to the classification maintained in an unbroken line of federal court decisions under Swift v. Tyson, supra. Federal courts in other circuits have held, since the Tompkins decision, that the state rule as to burden of proof must now be applied in diversity of citizenship cases. Equitable Life Assurance Society v. MacDonald, 9 Cir., 1938, 96 F. 2d 437; Schopp v. Muller Dairies, Inc., D.C.N.Y., 1938, 25 F.Supp. 50. See Montgomery Ward & Co., Inc. v. Snuggins, 8 Cir., 1939, 103 F.2d 458; Central Surety & Ins. Corp. v. Murphy, 10 Cir., 1939, 103 F.2d 117; Coca-Cola Bottling Co. v. Munn, 4 Cir., 1938, 99 F.2d 190, 193; Hagan & Cushing Co. v. Washington Water Power Co., 9 Cir., 1938, 99 F.2d 614; Lee v. Cannon Mills Co., 4 Cir., 1939, 107 F.2d 109.

The Supreme Court has recently decided that a federal district court in Texas, entertaining a bill to remove a cloud on title to Texas land, must, under Erie Railroad Co. v. Tompkins, supra, apply the established Texas rule that on an issue of bona fide purchase for value without notice, the burden of proof is upon him who attacks the legal title and asserts a superior equity. Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 203, 84 L.Ed. —— (December 4, 1939). In a brief opinion the court makes the point that the local rule "relates to a substantial right upon which the holder of recorded legal title to Texas land may confidently rely. * * * This was a valuable assurance in favor of its title." While it is not believed that this holding is necessarily conclusive of the question now before us, the fact that the court cited as authority Central Vermont Railway v. White, 238 U.S. 507, 512, 35 S.Ct. 865, 59 L.Ed. 1433, Ann.Cas.1916B, 252, a case relating to contributory negligence, strengthens our conclusion that the state rule as to burden of proof on the issue of contributory negligence should be followed in the federal court in diversity of citizenship cases.

Thus far, the case has been discussed as though suit had been brought in the federal

---

[11] See Home Insurance Co. v. Dick, 281 U.S. 397, 406, 407, 50 S.Ct. 338, 74 L.Ed. 926, 74 A.L.R. 701. Cf. Am.L. Inst. Restatement of Conflict of Laws, § 584: "The Court at the forum determines according to its own Conflict of Laws rule whether a given question is one of substance or procedure."

[12] Cf. First National Bank v. Liewer, 8 Cir., 1911, 187 F. 16, 18.

[13] This would not be true if the state court, though putting the ultimate burden of proof on the plaintiff, favors him with a presumption of due care. In such a case the defendant would have the burden of going forward with evidence tending to show contributory negligence.

court sitting in the state where the alleged tort occurred. But there is the complicating factor that the accident occurred in Maine and suit was brought in Massachusetts. This makes it necessary to consider three further points:

First, if the plaintiff had sued in a Massachusetts state court, would the Massachusetts Supreme Judicial Court have allowed the application of the Maine rule as to burden of proof? The answer is, no. The Court would have said that burden of proof is a matter of procedure only, and would have applied the Massachusetts rule that the burden is on the defendant to establish the plaintiff's contributory negligence. Such was the holding in Levy v. Steiger, 233 Mass. 600, 124 N.E. 477, and Smith v. Brown, Mass., 19 N.E.2d 732.[14]

Second, would such a decision by the Supreme Judicial Court of Massachusetts be subject to reversal by the Supreme Court of the United States? Presumably we are permitted under the Tompkins case thus to attack the decision of a state court collaterally, so to speak, for the Supreme Court would hardly require the federal courts to follow a local decision which, had it been appealed, would have been reversed by the Supreme Court on constitutional grounds.

No question is involved of sovereign jurisdiction of the state over person or property, a segment of conflict of laws where the Supreme Court of the United States has long had the last word, under the due process clause. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. In Kryger v. Wilson, 242 U.S. 171, 176, 37 S.Ct. 34, 61 L.Ed. 229, the Supreme Court expressed the view that doctrines of the conflict of laws are part of the body of the common law; and that an allegedly erroneous decision by a state court upon a point of conflict of laws no more raises a federal question than would a state decision departing from generally accepted doctrines of contracts or torts. Later decisions have qualified Kryger v. Wilson, supra, somewhat. Occasionally the full faith and credit clause has been successfully invoked, where a state court by an assumed erroneous application of doctrines of conflict of laws has failed to give effect to a statute of another state. See Royal Arcanum v. Green, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089, L.R.A.1916A, 771; John Hancock Mutual Life Ins. Co. v. Yates, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106. Cf. Pacific Employers Ins. Co. v. Industrial Accident Commission, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940. Two or three other decisions, in narrow circumstances, have cited the due process clause to upset judgments of state courts imposing liabilities that would not have been imposed by what the Supreme Court deemed the "appropriate" foreign law. Hartford Indemnity Co. v. Delta Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, 92 A.L.R. 928; Home Insurance Co. v. Dick, 281 U.S. 397, 406-409, 50 S.Ct. 338, 74 L.Ed. 926, 74 A.L.R. 701; Western Union Telegraph Co. v. Brown, 234 U.S. 542, 34 S.Ct. 955, 58 L.Ed. 1457. See Ætna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342. These decisions have been referred to by legal writers as indicating that the Supreme Court may ultimately establish itself as the final arbiter of all questions of conflict of laws.[15] See Ross, Has the Conflict of Laws Become a Branch of Constitutional Law, 15 Minn.L. Rev. 161; Dodd, The Power of the Supreme Court to Review State Decisions in the Field of Conflict of Laws, 39 Harv.L. Rev. 533; Note, 52 Harv.L.Rev. 1005, 1006.

Whatever the eventual development of this line of cases may be, we know of no decision indicating that the Supreme Court at the present time would reverse a decision of a state court in a case like Levy v. Steiger, supra, applying the lex fori rather than the lex loci delicti in the matter of burden of proof. Numerous decisions to this effect have been rendered by state courts, and it has never seemed to occur to anyone that a federal question was involved. Furthermore, in Levy v. Steiger, supra, the Massachusetts court was applying not its common law (which put the burden of proof on the plaintiff, Duggan v. Bay St. Ry., 230 Mass. 370, 375, 119 N.E. 757, L.R.A.1918E, 680), but a statute providing that "In all actions, civil or criminal, to recover damages for in-

---

14 Cf. American Law Institute Restatement of Conflict of Laws, § 595. See Note 2, supra.

15 On the question whether uniformity is desirable in this field, see Cavers, A Critique of the Choice-of-Law Problem, 47 Harv.L.Rev. 173, 199 et seq.; Lorenzen, Territoriality, Public Policy and the Conflict of Laws (1924) 33 Yale L.J. 736, 748. Cf. Pacific Employers Ins. Co. v. Industrial Accident Commission, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940.

juries to the person or property or for causing the death of a person, the person injured or killed shall be presumed to have been in the exercise of due care, and contributory negligence on his part shall be an affirmative defence to be set up in the answer and proved by the defendant." Mass.Laws 1914, c. 553, now Mass.G.L. (Ter.Ed.) 1932, c. 231, § 85. To hold that this statute is unconstitutional, as applied in Levy v. Steiger, supra, to a foreign tort, one would have to find somewhere in the Constitution an implied prohibition to the effect that no state shall pass any law altering an assumed nationally applicable body of doctrine concerning the conflict of laws, the final interpreter of which is the Supreme Court of the United States.

It follows, therefore, that the unimpeachable law of Massachusetts in the case at bar is, that in a suit brought in Massachusetts the burden of proof as to contributory negligence is on the defendant, despite the contrary rule applicable in Maine where the accident occurred.

Third, this being the Massachusetts law, there remains the inquiry, what law must be applied in the federal court in Massachusetts when jurisdiction is invoked on the ground of diversity of citizenship? Under Erie Railroad v. Tompkins, supra, is it the Massachusetts or the Maine rule? We know of no considered decision by the Supreme Court on this point. In the Tompkins case, suit was brought in the federal court in New York on a tort alleged to have been committed in Pennsylvania. The question was whether the railroad owed a duty of care to an undiscovered pedestrian walking on a much-used path along the right of way near the tracks. The Supreme Court held that the lower court was in error in treating this question as a matter of "general law", and sent the case back for determination in accordance with the common law of Pennsylvania as declared by its highest court. There is no doubt that in this situation the state courts of New York would have applied the same rule of conflict of laws, and would have looked to the lex loci delicti. Fitzpatrick v. International Ry. Co., 252 N.Y. 127, 169 N.E. 112, 68 A.L.R. 801. The decision in the Tompkins case manifestly tended to produce a uniformity in result in that particular situation, whether action on the Pennsylvania tort were brought in a New York state court or New York federal court. In Mutual Benefit Ass'n v. Bowman, 304 U.S. 549, 58 S.Ct. 1056, 1057, 82 L.Ed. 1521, suit was brought in the federal court in Nebraska on a contract of insurance made in New Mexico. The lower court decided a question of interpretation as a matter of "general law". In a brief per curiam opinion the Supreme Court reversed the judgment on the authority of Erie Railroad v. Tompkins, supra, and remanded the case to determine "the right of respondent to recover under the law of New Mexico". For all that appears, the Nebraska state courts would also have looked to the law of New Mexico to determine the interpretation of the contract. The case does not indicate what the decision would have been had it appeared that the Nebraska state courts would have applied a rule differing from that of the New Mexico courts. New York Life Ins. Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. 1329, was a similar case. In Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 208, 58 S.Ct. 860, 82 L.Ed. 1290 the court expressly left open the conflict of laws question.[16]

Until the point is finally ruled upon by the Supreme Court, lower courts must

---

16 The question has not been decided in this Circuit. In Malloy v. New York Life Ins. Co., 1 Cir., 1939, 103 F.2d 439, suit was brought in the Federal District Court of New Hampshire to cancel certain insurance policies on the ground of fraud. The policies were contracted for and delivered to the insured in Maine. This Court said, 103 F.2d at page 443: "The policies in question having been negotiated and delivered in the State of Maine, we have recourse to the laws of that State in determining the respective rights of the parties in the controversy here involved." Presumably the state courts of New Hampshire would have applied the Maine law in such a case; at least there was no indication to the contrary. The problem raised in the case at bar therefore was not considered.

There are cases also in other circuits where the problem was not discussed because it did not appear that the state court had a rule of conflicts different from that which the federal court regarded as appropriate. Traglio v. Harris, 9 Cir., 1939, 104 F.2d 439; Egan Chevrolet Co. v. Bruner, 8 Cir., 1939, 102 F.2d 373, 122 A.L.R. 987; Chicago G. W. Ry. Co. v. Robinson, 8 Cir., 1939, 101 F.2d 994; Bissonette v. National Biscuit Co., 2 Cir., 1939, 100 F.2d 1003; Rachlin v. Libby-Owens-Ford Glass Co., 2 Cir., 1938, 96 F.2d 597; Equitable Life Assur. Soc.

piece out as best they can the implications of the Tompkins case. The theory is that the federal court in Massachusetts sits as a court coordinate with the Massachusetts state courts to apply the Massachusetts law in diversity of citizenship cases.[17] Under Swift v. Tyson, supra, the federal courts were free to disregard state court decisions on matters of "general law", and this included state court decisions on the common law relating to conflict of laws. Boseman v. Connecticut Gen. Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732; Citizens Bank v. Waugh, 4 Cir., 78 F.2d 325, 100 A.L.R. 939; Dygert v. Vermont Loan & Trust Co., 9 Cir., 94 F. 913. But under the Tompkins case the Massachusetts law must be determined by the state statutes and the common law as interpreted by the state courts, not by the federal court's notion of "general law". The powerful argument by Holmes, J., dissenting, in Black & White Taxi Co. v. Brown & Yellow Taxi Co., 276 U.S. 518, 532–535, 48 S.Ct. 404, 72 L.Ed. 681, 57 A.

L.R. 426, cited with approval by the majority opinion in the Tompkins case (304 U.S. 64, at page 79, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487), seems to be applicable to that portion of the Massachusetts common law relating to conflict of laws quite as much as to the common law of contracts or torts. Except in the limited range of cases, already alluded to above, where state court decisions on points of conflict of laws are subject to reversal by the United States Supreme Court under the federal constitution, the rules applicable to conflict of laws are not "a transcendental body of law outside of any particular state but obligatory within it". If the federal court in Massachusetts on points of conflict of laws may disregard the law of Massachusetts as formulated by the Supreme Judicial Court and take its own view as a matter of "general law", then the ghost of Swift v. Tyson, supra, still walks abroad, somewhat shrunken in size, yet capable of much mischief.[18] In the case at bar, it is difficult to see that

---

v. Aaron, 6 Cir., 1940, 108 F.2d 777, 778.

In the following cases the point was noticed and expressly left open: Myers v. Ocean Accident & Guarantee Corp., 4 Cir., 1938, 99 F.2d 485; New York Life Ins. Co. v. Waterman, 9 Cir., 1939, 104 F.2d 990. Cf. Ostroff v. New York Life Ins. Co., 9 Cir., 1939, 104 F.2d 986.

In Schram v. Smith, 9 Cir., 1938, 97 F.2d 662, 664, the receiver of a Detroit bank sued in the federal court in Arizona to recover unpaid assessments made by the Comptroller of the Currency, based upon the defendant's ownership of stock in a Michigan holding corporation which held the stock of the insolvent bank. If the articles of association of the Michigan holding corporation created a contractual liability on the part of the shareholders to pay their rateable proportion of assessments, the Arizona statute of limitations had not run on such contractual liability. The Court said that in considering the effect of the holding corporation's articles of association, the law of Arizona is to be applied, citing the Tompkins case. It then cited Arizona decisions to the effect that the law as to the validity and interpretation of personal contracts is that of the place where they are made, unless the parties intended that they should be governed by the law of some other place. The Court continued: "Therefore, we think that the Arizona courts would apply the law of Michigan, interpreting the provision in the articles of association." It seems that the Court

regarded the law of Michigan as applicable only because the state courts in Arizona would have looked to the Michigan law.

[17] See Livingston v. Moore, 7 Pet. 469, 541, 8 L.Ed. 751, in which the Supreme Court, nine years before Swift v. Tyson, supra, was decided, said: "Now, the relation in which our circuit courts stand to the states in which they respectively sit and act, is precisely that of their own courts; especially, when adjudicating on cases where state lands or state statutes come under adjudication. When we find principles distinctly settled by adjudications, and known and acted upon as the law of the land, we have no more right to question them, or deviate from them, than could be correctly exercised by their own tribunals."

[18] See McCormick & Hewins, The Collapse of "General" Law in the Federal Courts, 33 Ill.L.Rev. 126, 138–139. See also Goodrich, The Conflict of Laws (2d ed.), 24: "Thus, [as a result of Tompkins case] today the federal courts have no independent rules of common law and therefore Conflict of Laws, but must follow the rules established in the state courts of their district. The final result is proper and desirable; it prevents a difference in decision depending upon whether suit is brought in the state or federal courts, and one more possibility of divergence based upon the fortuitous event of the forum chosen has been abolished."

any gain in the direction of uniformity would be achieved by creating a discrepancy between the rules of law applicable in the Massachusetts state and federal courts, respectively, in order to bring the law of the Massachusetts federal court in harmony with the law that would be applied in the state courts of Maine.

Our conclusion is that the court below was bound to apply the law as to burden of proof as it would have been applied by the state courts in Massachusetts.

This result may seem to present a surface incongruity, viz., the deference owing to the substantive law of Massachusetts as pronounced by its courts requires the federal court in that state to apply a Massachusetts rule as to burden of proof which the highest state court insists is procedural only. The explanation is that reasons of policy, set forth in the Tompkins case, make it desirable for the federal court in diversity of citizenship cases to apply the state rule, because the incidence of burden of proof is likely to have a decisive influence on the outcome of litigation; and this is true regardless of whether the state court characterizes the rule as one of procedure or substantive law. Certainly the federal court in Massachusetts cannot treat burden of proof as a matter of procedure in order to disregard the Massachusetts rule, and then treat it as substantive law in order to apply the Maine rule. Under the conclusion we have reached, if suit were brought in Massachusetts, the state and federal courts there would be in harmony as to burden of proof; and if suit were brought in Maine, the state and federal courts there would likewise be in harmony on this important matter. It is true that the rule applied in the Maine courts would not be the same as the rule applied in the Massachusetts courts. But this is a disparity that existed prior to Erie Railroad v. Tompkins, supra, and cannot be corrected by the doctrine of that case. It is a disparity that exists because Massachusetts may constitutionally maintain a rule of conflict of laws to the effect that the incidence of burden of proof is a matter of "procedure" to be governed by the law of the forum. Levy v. Steiger, supra.

For error in the instructions given to the jury on the burden of proof, the judgment must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

The judgment of the District Court is vacated, the verdict set aside and the case is remanded to that court for further proceedings not inconsistent with this opinion.; the appellant recovers costs of appeal.

WILSON, Circuit Judge, concurs in the result.

PETERS, District Judge, dissents.